# KENTUCKY RAILROAD TAX CASES.

## CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILROAD COMPANY v. COMMONWEALTH OF KENTUCKY.

## LOUISVILLE & NASHVILLE RAILROAD COMPANY v. SAME.

## CHESAPEAKE, OHIO & SOUTHWESTERN RAILROAD COMPANY v. SAME.

IN ERROR TO THE COURT OF APPEALS OF THE COMMONWEALTH OF KENTUCKY.

Argued October 16, 19, 1885.—Decided November 16, 1885.

A State statute for raising public revenue by the assessment and collection of taxes, which gives notice of the proposed assessment to an owner of property to be affected, by requiring him at a time named to present a statement of his property, with his estimate of its value, to a designated official charged with the duty of receiving the statement; which fixes time and place for public sessions of other officials, at which this statement and estimate are to be considered, where the official valuation is to be made, and when and where the party interested has the right to be present and to be heard; and which affords him opportunity, in a suit at law for the collection of the tax, to judicially contest the validity of the proceeding, does not necessarily deprive him of his property without " due process of law," within the meaning of the Fourteenth Amendment to the Constitution of the United States.

A State law for the valuation of property and the assessment of taxes thereon, which provides for the classification of property subject to its provisions into different classes ; which makes for one class one set of provisions as to modes and methods of ascertaining the value, and as to right of appeal, and different provisions for another class as to those subjects ; but which provides for the impartial application of the same means and methods to all constituents of each class, so that the law shall operate equally and uniformly on all persons in similar circumstances, denies to no.person affected by it " equal protection of the laws," within the meaning of the Fourteenth Amendment to the Constitution of the United States.

The Commonwealth of Kentucky brought its several actions against the railroad companies above named as plaintiffs in error respectively, to recover the amounts of certain taxes levied against each of them, under the provisions of "An act to prescribe the mode of ascertaining the value of the property of railroad companies for taxation, and for taxing the same," approved April 3, 1878. Bullitt & Feland's General Statutes of Kentucky, 1881, 1019.

As the validity of this statute is drawn in question in these actions, it is here set out in full, as follows :

" § 1. *Be it enacted by the General Assembly of the Commonwealth of Kentucky*, That the president or chief officer of each railroad company, or other corporation owning a railroad lying in this State, shall, in the month of July in each year, return to the Auditor of Public Accounts of the State, under oath, the total length of such railroad, including the length thereof beyond the limits of the State, and designating its length within this State, and in each county, city, and incorporate town therein, together with the average value per mile thereof, for the purpose of being operated as a carrier of freight and passengers, including engines and cars and a list of the depot grounds and improvements, and other real estate of the said company, and the value thereof, and the respective counties, cities, and incorporated towns, in which the same are located. That if any of said railroad companies owns or operates a railroad or railroads out of this State, but in connection with its road in this State, the president or chief officer of such company shall only be required to return such proportion of the entire value of all its rolling-stock as the number of miles

of its railroad in this State bears to the whole number of miles operated by said company in and out of this State.

"§ 2. That should any railroad, or part of a line of railroad, in this State, be in the hands or under the control of a receiver or other person, by order or decree of any court in this or any other State, it shall be the duty of such receiver or other person to make, under his oath, the returns and valuations required by the first section of this act; and should such president or chief officer of any railroad company, or such receiver, fail to make said returns and valuations on or before the first day of August in each and every year, the said Auditor shall proceed and ascertain the facts and values required by this act to be returned, and in such manner and by such means as he may deem best, and at the cost of the company failing to make the returns and values.

"§ 3. That the governor of the State, on or before the first day of August, 1878, shall appoint three disinterested freeholders, citizens of this State, who shall constitute a board of equalization, who shall meet annually at the office of the Auditor in Frankfort, on the first day of September in each year, a majority present constituting a quorum for the transaction of business; and at the said meetings the Auditor shall lay before them the returns made to him under this act, and any schedules and valuations he may have made under the second section hereof; and should the valuations, or any of them, in the judgment of said board, be either too high or too low, they shall correct and equalize the same by a proper increase or decrease thereof. Said board shall keep a record of their proceedings, to be signed by each member present at any meeting; and the said board is hereby authorized to examine the books and property of any railroad company to ascertain the value of its property, or to have them examined by any suitable disinterested person, to be appointed by them for that purpose. The members of said board shall hold their office for the term of four years, and shall receive for their services ten dollars per day, and all travelling and other necessary expenses whilst in actual service: *Provided*, That said service shall not be for a longer period of time than twenty days in any

one year; and before proceeding to act under their appointment, they shall take an oath before the Governor of the State, that they will faithfully and impartially perform their duties as members of said board of equalization; and in the case of the death, resignation of either, or failure to act, the Governor shall fill the vacancy by another appointment.

"§ 4. The same rate of taxation for State purposes, which is or may be in any year levied on other real estate in this Commonwealth, shall be, and is hereby, levied upon the value so found by the said board, of the railroad, rolling-stock, and real estate of each company; and the same rate of taxation for the purposes of each county, city, town, or precinct, in which any portion of any railroad is located, which is or may be in any year levied on other real estate therein, shall be, and is hereby, levied on the value of the real estate of said company therein, and of the number of miles of such road therein, reckoned as of the value of the average value of each mile of such railroad with its rolling-stock, as ascertained as aforesaid. And immediately after the said board shall have completed its valuations each year, the Auditor of Public Accounts shall notify the clerk of each county court of the amount so assessed for taxation in his county, and each railroad company of the amount of its assessment for taxation for State purposes, and for the purposes of such county, city, town, or precinct. And all existing laws in this State, authorizing the assessment and taxation of the property of railroad companies by counties, cities, or incorporated towns, are hereby repealed; and no county, city, or incorporated town in this State, shall hereafter assess, levy, or collect any taxes on the property of railroad companies of this State, except as provided by this act.

"§ 5. All taxes levied under the provisions of this act shall be paid on or before the 10th day of October in each year; and for a failure to pay the same, the officers of the said companies shall be subject to the same penalties to which they are now subject for a failure to pay the taxes now levied by law. And the taxes, in behalf of the Commonwealth, may be recovered by action in the Franklin circuit court, and those in behalf of

the counties by actions in the courts of civil common law jurisdiction in such counties, respectively.

" § 6. That all laws in conflict with this act are repealed.

" § 7. This act shall take effect from its passage."

The powers and duties conferred by this act upon the board of equalization were, by a subsequent act, approved April 19, 1882, devolved upon the board of railroad commissioners, appointed under an act approved April 6, 1882.

These actions were brought in the Franklin Circuit Court in pursuance of the 5th section of the act.

The cause of action against the Cincinnati, New Orleans and Texas Pacific Railroad Company was set out in the petition, according to the practice in Kentucky, as follows :

" The plaintiff states that the defendant is a railroad company and corporation, and is, and was during the year 1882, the owner of, by lease, and operating, a line of railway lying in the State of Kentucky known as the Cincinnati Southern Railway, and the same constructed under, and chartered and incorporated by, an act of the General Assembly of the Commonwealth of Kentucky, entitled ' An act to authorize the trustees of the Cincinnati Southern Railway to acquire the right of way and to extend a line of railway through certain counties in this Commonwealth,' approved February 13th, 1872.

" Plaintiff states that the defendant, for the purpose of assessment and taxation for the year 1882, as required by law, reported to the Auditor of Public Accounts of the State of Kentucky the total length of said road owned and operated by it as aforesaid and the value thereof per mile, and also reported its engines, cars, depot grounds, improvements, and other real estate, and the value thereof. The total valuation of said roads, including sidings and other taxable property as reported, was —— dollars.

" Plaintiff states that after said report and valuation was made to the Auditor of Public Accounts by the defendant, the Board of Railroad Commissioners, who by law constitute a Board of Equalization to value and assess the railroad property of the State, after being sworn, as required by law, met on the first day of September, 1882, at the office of the auditor, in

Frankfort, and with a majority of said board present constituting a quorum, the auditor placed before them the valuations, returns, and report made to him by defendant.

"Plaintiff states that said Board of Equalization continued its sittings from day to day, as provided by law, of which the defendant had due notice; and plaintiff avers that defendant did appear before said board by its officers, agents, and attorneys, and presented such facts, figures, and information and argument in relation to the valuation and assessment for taxation of its said property as it saw proper to.

"Plaintiff states that said board, after a full hearing of defendant, by her officers, agents, and attorneys, and a full consideration of said returns, reports, information, and arguments before them, valued and assessed for taxation for the year 1882 the defendant's line of railroad lying in this State, the same reported by defendant to the auditor, together with the rolling-stock, engines, cars, depot grounds, improvements, and other real estate, at the sum of $6,027,942.00, and on the —— day of September, 1882, returned and filed with the Auditor of Public Accounts the record of said assessment and valuation, signed and attested, as provided by law, a certified copy of which, marked 'A,' is filed herewith as a part hereof.

"Plaintiff states that the Auditor of Public Accounts, before the 10th day of March, 1882 [1883], duly notified defendant of the amount of its assessment for taxation, and, as required by law, opened an account with defendant, charging it with the sum of $28,632.42, the amount of tax due the State of Kentucky upon said assessment and valuation of the defendant's property for the year 1882 at 47½ cents on the one hundred dollars, which is the rate of taxation prescribed by law on such property, and all other real estate of the Commonwealth. A certified copy of said account is filed herewith as a part hereof, marked 'B.'

"Plaintiff states that the defendant is indebted to him in the sum of $28,632.42, taxes due as aforesaid for the year 1882, no part of which has been paid.

"Wherefore plaintiff prays judgment against the defendant

for said debt, and interest from October 10th, 1882, and for her costs and all proper relief."

In the case against the Louisville and Nashville Railroad Company, the petition is substantially the same, except the averment of the valuation of its lines o. railroad, which, it is alleged, were valued and assessed at the sum of $15,521,406, on which the amount of tax, at 47½ cents to the $100, is $72,-726.69, on which there is admitted a credit of $25,000, paid January 22, 1883.

The taxable property of the other plaintiff in error, the Chesapeake, Ohio. and Southwestern Railroad Company, it is averred in the petition, otherwise substantially the same as in the other cases, was valued and assessed at $2,791,994, on which the tax levied was $13,261.98, which is credited with $6,798.32, paid January 5, 1883.

An answer was filed in each case, but, so far as they raised an issue of fact, they were withdrawn, and the causes were heard on demurrers, the questions of law being such as arose upon the face of the petitions.

Judgments were rendered in favor of the Commonwealth in all the cases, and were affirmed by the Court of Appeals, and thereupon the present writs of error were allowed and have been prosecuted.

*Mr. C. B. Simrall, Mr. William Lindsay,* and *Mr. Holmes Cummins,* for plaintiffs in error.

It has been held in Kentucky, that for the purposes of taxation a railroad is a unit; that its rolling-stock and its road are not subject to local taxation for municipal purposes, but that they are fixtures and to be treated as real estate. *Cincinnati, &c., Railway Co.* v. *Commonwealth,* 81 Ky. 492, 503. In proceedings for assessment for taxation in that State the owner of private property has the right (1) to value his own property under oath for purposes of taxation. (2) If this value is raised, to appeal successively to different boards created by law for the purpose, and to have evidence under oath taken regarding it, reduced to writing, and preserved. (3) On failure to list his property to have it valued on his own application, and

upon the testimony of witnesses. (4) To be notified by the board of supervisors of a purpose to increase his return, and to have opportunity to be heard as to it before the increase can be made. On the other hand, as to railroads, the law denies the companies the right to value their own property for taxation, but imposes this duty on State officials, without regard to fitness or qualification. The ample protection which the law gives to private citizens against irresponsible assessors is denied to railroad corporations.

I. Corporations are persons within the purview of § 1, Fourteenth Amendment, which guarantees to every person the equal protection of the law. It is true that this point has never been directly decided, although the point has twice been before the court:—In *Railroad Co.* v. *Richmond*, 96 U. S. 521, and *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574. But in every case which required the enforcement of the obligations of a contract, or the protection of the rights of property, this court has looked beyond the shell of the corporate name, to the persons and individuals represented by that name, and has accorded to them the full protection of the law as natural persons. *Bank of the United States* v. *Devaux*, 5 Cranch, 61; *Providence Bank* v. *Billings*, 4 Pet. 514, 562; *United States* v. *Amedy*, 11 Wheat. 392; *Beaston* v. *Farmers' Bank*, 12 Pet. 102; *Soc'y for Propagation of the Gospel* v. *New Haven*, 8 Wheat. 464, 489; *National Bank* v. *Graham*, 100 U. S. 699; *United States* v. *Ins. Co.*, 22 Wall. 99; *Louisville, &c., Railroad Co.* v. *Letson*, 2 How. 497; *Marshall* v. *Baltimore & Ohio Railroad Co.*, 16 How. 314. *Railroad Tax Cases*, 13 Fed. Rep. 722, is directly in point. See as to the principle of interpretation, *Martin* v. *Hunter*, 1 Wheat. 304, 326; *Woodson* v. *Murdock*, 22 Wall. 351; *Henshaw* v. *Foster*, 9 Pick. 312, 316; *Prigg* v. *Pennsylvania*, 16 Pet. 539, 612; *Louisville & Nashville Railroad Co.* v. *Commonwealth*, 1 Bush, 250, 253; *People* v. *Fire Ins. Ass'n*, 92 N. Y. 311. The cases of *Bank of Augusta* v. *Earle*, 15 Pet. 517, and *Paul* v. *Virginia*, 8 Wall. 168, are not antagonistic to this contention. They only decide that citizens of one State do not carry with them into another State special privileges or immunities conferred by a

law of their own State, corporate or otherwise. See Mr. Justice
Field's opinion in the *Slaughter House Cases*, 16 Wall. 57, 100.

II. The term "equal protection of the laws," as used in the
Fourteenth Amendment, embraces and covers all rights of the
citizen, whether pertaining to property, liberty or life. Mr.
Justice Miller in *Davidson* v. *New Orleans*, 96 U. S. 97, 104;
*Missouri* v. *Lewis*, 101 U. S. 22; Mr. Justice Field in *San
Mateo* v. *Southern Pacific Railroad Co.*, and the *Slaughter
House Cases*, already cited; and *Barbier* v. *Connolly*, 113
U. S. 27, 31. If the law of Kentucky makes one class of tax-
payers (the private citizens) favorites, surrounds and protects
them by every safeguard which ingenuity can devise, and
leaves another class (the railroad corporations) helpless and un-
protected and without those safeguards, as it certainly does,
it denies to the latter class the "equal protection" it should
afford.

III. By the act of April 3, 1878, owners of railroad property
are deprived of their property without due process of law.
"Due process of law," as used in the Federal Constitution, and
"law of the land," as used in State constitutions, are synony-
mous terms: Cooley on Const. Limitations, 4th Ed. 437; and
guarantee "the right of hearing and condemnation; a pro-
ceeding upon inquiry, and only after trial." Ib. 438. See also
pages 265, 266. These views express concisely the judgments
of Federal and of State courts. *Cleghorn* v. *Postlethwaite*, 43
Ill. 428; *Darling* v. *Gunn*, 50 Ill. 424; *Patten* v. *Green*, 13
Cal. 325; *Sioux City & Pacific Railroad* v. *Washington
County*, 3 Neb. 30; *Stuart* v. *Palmer*, 74 N. Y. 183; *Leaven-
worth County* v. *Lang*, 8 Kansas, 284; *Davidson* v. *New Orleans*,
96 U. S. 97, 107; *Philadelphia* v. *Miller*, 49 Penn. St. 440;
*Commonwealth* v. *Runk*, 26 Penn. St. 235; *Butler* v. *Saginaw
County*, 26 Mich. 22. The court cannot, we think, but con-
clude both from the weight of reason and adjudication, that a
law which gives to any tribunal the power to affect the prop-
erty of the citizen, without a right in the citizen to be heard
on the question of affecting his property, is a violation of the
Fourteenth Amendment of the Federal Constitution. The
same rule has long obtained in England as a fundamental prin-

ciple of justice. *Painter* v. *Liverpool Gas Co.*, 3 Ad. & El. 433 ; *Cooper* v. *Board of Works for Wandsworth*, 14 C. B. N. S. 180 ; *King* v. *University of Cambridge*, 8 Mod. 148, 163. The notice and hearing that the taxpayer is entitled to is not a matter of favor ; it is a right, to be secured by law. The act of April 3, 1878, required no notice ; none could be given under it. *McMillan* v. *Anderson*, 95 U. S. 37, is distinguishable from these cases. There was a right to enjoin the collection of the tax and have its validity tried in the injunction proceedings. The Kentucky law afforded no way to test the correctness of the assessments. So, too, this case is clearly distinguishable from the *State Railroad Tax Cases*, 92 U. S. 575.

We do not question the power of the legislature to apportion property to taxation by fixing specific taxes, *i. e.*, license taxes, and taxes on business or occupations, taxes on franchises and privileges, or an ad valorem tax on property, or taxes apportioned by special benefits ; all this is undoubtedly a matter of legislation, but under each and every class, the constitutional rights of the taxpayer guarantee to him uniformity and equality with all others of his class. But it is not, therefore, a sound argument which maintains, that because the legislature has power to lay a specific tax, or to classify and apportion property for taxation, that there is, therefore, reposed in the legislature, that supreme and sovereign power which can impose upon a class more than its just burdens, or require a member of a class to submit to impositions that are not laid upon others. " The power to tax involves the power to destroy," says an eminent jurist. The only safeguard against destruction, in the name of taxation, is constitutional protection, and no protection is guaranteed if any class of citizens is the subject of discrimination, or if supreme power to value for taxation is arbitrarily reposed in any body, be it the legislature of the State, or a board of tax supervisors.

*Mr. P. W. Hardin*, Attorney-General of Kentucky, for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

After stating the facts in the language above reported, he continued:

Two Federal questions. arise on the record, in these cases, contained in the following propositions affirmed by the plaintiffs in error:

First. That the act of April 3, 1878, and the taxes levied in pursuance of it, if enforced, as it is sought to be, in these judgments, in. effect take the property of the defendants below without due process of law; and—

Second. That they constitute a denial of the equal protection of the laws: in both particulars violating the Fourteenth Amendment to the Constitution of the. United States.

In support of the first of these propositions, it is contended on behalf of the plaintiffs in error, that, by the enforcement of these judgments, they will be deprived of their property without due process of law, because the valuation of their property under the act is made by the board of railroad commissioners without the right on their part to notice of the proceeding, or the right to be heard in opposition to any proposed action of the board in its progress.

It has, however, been repeatedly decided by this court that the proceedings to raise the public revenue by levying and collecting taxes are not necessarily judicial, and that "due process of law," as applied to that subject, does not imply or require the right to such notice and hearing as are considered to be essential to the validity of the proceedings and judgments of judicial tribunals. Notice by statute is generally the only notice given, and that has been held sufficient. "In judging what is 'due process of law,'" said Mr. Justice Bradley, in *Davidson* v. *New Orleans*, 96 U. S. 97, 107, "respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law;' but if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.'"

In its application to proceedings for the levy and collection

of taxes, it was said in *McMillen* v. *Anderson*, 95 U. S. 37, 42, that it "is not, and never has been, considered necessary to the validity of a tax" "that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed." This language, it is true, was used in the decision of a case in reference to a license tax, where all the circumstances of its assessment were declared by statute, and nothing was intrusted to the discretion of public officers; but, in the *State Railroad Tax Cases*, 92 U. S. 575, 610, where the ascertainment of the taxable value of railroads was the duty of a board, as in the present cases, whose assessment was challenged for the reason that the proceeding was not "due process of law," for want of notice and a hearing, it was said by Mr. Justice Miller, delivering the opinion of the court: "This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right or redress a wrong; and in the business of assessing taxes, this is all that can be reasonably asked."

In the proceedings questioned in these cases, there was, in fact and in law, notice and a hearing. The railroad company, by its president or chief officer, is required by law, at a specified time, to return to the auditor of public accounts, under oath, a statement showing "the total length of such railroad, including the length thereof beyond the limits of the State, and designating its length within this State, and in each county, city, and incorporate town therein, together with the average value per mile thereof, for the purpose of being operated as a carrier of freight and passengers, including engines and cars and a list of the depot grounds and improvements and other real estate of the said company, and the value thereof, and the respective counties, cities, and incorporated towns, in which the same are located. That, if any of said railroad companies owns or operates a railroad or railroads out of this State, but in connection with its road in this State, the president or chief officer of such company shall only be required to return such proportion of the entire value of all its rolling-stock as the number of miles of its railroad in this State bears to the whole

number of miles operated by said company in and out of this State."

This return, made by the corporation through its officers, is the statement of its own case, in all the particulars that enter into the question of the value of its taxable property, and may be verified and fortified by such explanations and proofs as it may see fit to insert. It is laid by the auditor of public accounts before the board of railroad commissioners, and constitutes the matter on which they are to act. They are required to meet for that purpose on the first day of September in each year, at the office of the auditor, at the seat of government, when these returns are to be submitted to them. The statute declares that, " should the valuations . . . be either too high or too low, they shall correct and equalize the same by a proper increase or decrease thereof. Said board shall keep a record of their proceedings, to be signed by each member present at any meeting; and the said board is hereby authorized to examine the books and property of any railroad company to ascertain the value of its property, or to have them examined by any suitable disinterested person, to be appointed by them for that purpose." And in the performance of these duties, their sessions are limited to a period of not longer than twenty days in any one year.

These meetings are public, and not secret. The time and place for holding them are fixed by law. The proceedings of the board are required to be made matter of record, and authenticated by the signature of the quorum present. Any one interested has the right to be present. In reference to this point, the Court of Appeals of Kentucky, in its decision in these cases, says (81 Ky. 492, 512): "As we construe this act, although in the nature of an original assessment, the parties had the right to be heard, and were in fact heard before the board passing on the question of valuation." It is averred, in the petitions filed in these actions, that " defendant did appear before said board by its officers, agents, and attorneys, and presented such facts, figures, and information, and argument in relation to the valuation and assessment for taxation of its said property, as it saw proper to ; " and " that said board, after a full

hearing of defendant by her officers, agents, and attorneys, and a full consideration of said returns, reports, information, and arguments before them, valued and assessed for taxation" the defendant's line of railroad, &c. These averments are not denied, but stand confessed in the record of each case.

It is said, however, in answer to this, by counsel for plaintiffs in error, in argument, that whatever was in fact this alleged hearing, it could only have been accorded as a matter of grace and favor, because it was not demandable, as of right, under the law, and consequently has no such legal value as attaches to a hearing to which the law gives a right, and to which it compels the attention of the officer, under an imperative obligation, with the sense of official responsibility for impartial and right decision, which is imputed to the discharge of official duty.

But such is not the construction put upon the statute, as we have seen, by the Court of Appeals of the State, nor the practical construction, as we infer from the averments of the pleadings, put upon it by the officers called to act under it. And if the plaintiffs in error have the constitutional right to such hearing, for which they contend, the statute is properly to be construed so as to recognize and respect it, and not to deny it. The Constitution and the statute will be construed together as one law. This was the principle of construction applied by this court, following the decisions of the State court, in *Neal* v. *Delaware,* 103 U. S. 370, where words, denying the right, were regarded as stricken out of the State Constitution and statutes, by the controlling language of the Constitution of the United States; and in the case of *Cooper* v. *The Wandsworth Board of Works,* 14 C. B. N. S. 180, in a case where a hearing was deemed essential, it was said by Byles, J., "that, although there are no positive words in a statute requiring that the party shall be heard, yet the justice of the common law will supply the omission of the legislature." p. 194.

It is still urged, however, that there is, notwithstanding what has been said, no security that the final action of the board of railroad commissioners, in valuing and assessing railroad property under this statute, may not be unequal, unjust

and oppressive, and that either by error of judgment, through caprice, prejudice, or even from an intention to oppress, valuations may be made which are excessive, bearing no reasonable relation to what is fair and just, and fixed arbitrarily, based neither upon actual evidence nor an honest estimate. But the same suppositions may be indulged in, in opposition to all contrary presumptions, with reference to the final action of any tribunal appointed to determine the matter, however carefully constituted, and however carefully guarded in its procedure, and whether judicial or administrative. Such possibilities are but the necessary imperfections of all human institutions, and do not admit of remedy ; at least no revisory power to prevent or redress them enters into the judicial system, for, by the supposition, its administration is itself subject to the same imperfections.

But whatever relief courts of justice may afford against the injuries apprehended, when in fact they have resulted, is secured to the plaintiffs in error by the very statute of which they complain. For the valuation of railroad property, under that act, and the assessment of the taxes thereon, are not final, in the sense that they constitute a charge upon the property subject to the tax, or a liability fixed upon the corporation owning it. That result can be attained, and the tax actually collected, only by suit, as provided in the fifth section of the statute, either against the officers of the companies for penalties incurred by a failure to pay the taxes levied, or for the recovery of the taxes themselves, by action in the Franklin Circuit Court, or in the courts having jurisdiction in the counties, for the taxes payable to them respectively. The case is thus brought directly and distinctly within the decision in *Davidson* v. *New Orleans*, 96 U. S. 97, 104, where it was held, "that, whenever by the laws of a State, or by State authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be of the whole State, or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as

is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." And this is the principle that was followed in the subsequent case of *Hagar* v. *Reclamation District,* 111 U. S. 701. In that case, the statute of California, which conferred the jurisdiction, authorized any defence, going either to the validity or to the amount of the tax assessed, to be pleaded. What inquiries may be permitted in such cases, of course, is a matter that depends upon the particular provisions of the law of the jurisdiction. In the absence of such provisions, and as a principle of general jurisprudence, it is safe to say, that any defence is admissible which establishes the illegality of the proceeding resulting in the alleged assessment, whether because it is in violation of the local law which is relied on as conferring the authority upon which it is based, or because it constitutes a denial of a right secured to the party complaining by the Constitution of the United States. The judgments now under review were rendered in just such actions, so that we cannot escape the conclusion that there is no ground for the plaintiffs in error to contend that they have been rendered without due process of law.

The plaintiffs in error, however, did interpose a defence below, legitimate in itself, and arising under the Constitution of the United States, namely, that in the proceedings of the board of railroad commissioners, resulting in the valuation and assessment, under the act of April 3, 1878, they were severally denied the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution. As this defence was overruled by the Court of Appeals of Kentucky, another Federal question is presented which we are bound now to examine and decide.

The discrimination against railroad companies and their property, which is the subject of complaint, as being unjust and unconstitutional, arises from the fact that, in the legislation of Kentucky on the subject, railroad property, though called real estate, is classed by itself as distinct from other real estate, such as farms and city lots, and subjected to different

means and methods for ascertaining its value for purposes of taxation, and differing as well from those applied to the property of corporations chartered for other purposes, such as bridge, mining, street railway, manufacturing, gas and water companies. These latter report to the auditor the total cash value of their property, and pay into the treasury as a tax, upon each $100 of its value, a sum equal to the tax collected upon the same value of real estate; and their reports and valuations are treated as complete and perfect assessments, not subject to revision by any board or court, and conclusive upon the taxing officers.

But there is nothing in the Constitution of Kentucky that requires taxes to be levied by a uniform method upon all descriptions of property. The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods. The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. There is no objection, therefore, to the discrimination made as between railroad companies and other corporations in the methods and instrumentalities by which the value of their property is ascertained. The different nature and uses of their property justify the discrimination in this respect which the discretion of the legislature has seen fit to impose.

So, the fact that the legislature has chosen to call a railroad, for purposes of taxation, real estate, does not identify it with farming lands and town lots, in such a sense as imperatively to require the employment of the same machinery and methods for all, in the process of valuation for purposes of taxation. Calling them by the same name does not obliterate the essential differences between them, and accordingly, it is not insisted on in argument, as an objection to the system, that a railroad running through several counties is valued and taxed as a unit and by a special board organized for that purpose, while other real estate is valued in each county by assessors. The final

point of objection seems to be reduced to this. In the case of ordinary real estate, it is said, when the assessor has made his valuation, it is submitted to a board of supervisors, who may change the valuation, but not so as to increase it, without notice to the tax-payer, and an opportunity for a formal hearing, upon testimony to be adduced under oath, and with a right of appeal on his part, first, to a county judge, and, again, if the amount of the tax is equal to fifty dollars, to the Circuit Court. This is contrasted with the proceeding in the case of railroad property before the board of railroad commissioners, in which it is alleged there is no notice of an intended change in the valuation returned by the company, and no appeal allowed if it is increased.

The discrimination, however, is apparent rather than real. An examination of the statutes shows, that the original valuation of the assessor, in case of ordinary real estate, is conclusive upon the tax-payer, no matter how unsatisfactory; and the appeal allowed is only from the action of the board of supervisors, in case they undertake to increase the valuation made by the assessor. But in the case of railroad property, no board has authority to increase the original assessment made by the railroad commissioners, and there is, therefore, no case for an appeal similar to that of the owner of ordinary real estate.

But were it otherwise, the objection would not be tenable. We have already decided that the mode of valuing railroad property for taxation under this statute is due process of law. That being so, the provision securing the equal protection of the laws does not require, in any case, an appeal, although it may be allowed in respect to other persons, differently situated. This was expressly decided by this court in the case of *Missouri* v. *Lewis*, 101 U. S. 22, 30. It was there said by MR. JUSTICE BRADLEY, delivering the opinion of the court and speaking to this point, that, " the last restriction, as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under

like circumstances, to resort to them for redress." The right to classify railroad property, as a separate class, for purposes of taxation, grows out of the inherent nature of the property, and the discretion vested by the Constitution of the State in its legislature, and necessarily involves the right, on its part, to devise and carry into effect a distinct scheme, with different tribunals, in the proceeding to value it. If such a scheme is due process of law, the details in which it differs from the mode of valuing other descriptions and classes of property cannot be considered as a denial of the equal protection of the laws.

We see no error in the several judgments of the Court of Appeals of Kentucky in these cases, and they are accordingly

*Affirmed.*

MR. JUSTICE BLATCHFORD did not sit in these cases, or take any part in their decision.