THE STATE v. W. A. FRENCH AND GEORGE R. FRENCH.

*Constitution— Taxation—License—Interstate   Commerce.*

The tax imposed on merchants and other dealers by the Act to Raise
Revenue (ch. 323, § 22, Laws 1891), of one-tenth of one per centum
of their purchases, is not a tax on *property*, but upon the "occu-
pation" of buying and selling goods *in the State;* it is expressly
authorized by the Constitution of North Carolina, and is not in
conflict with the Federal Constitution, notwithstanding the
merchandise bought and sold is purchased from persons in other
States.

This was a CRIMINAL ACTION, begun before a Justice of
the Peace and carried thence by appeal to the Criminal
Court of NEW HANOVER, where it was tried before *Meares, J.,*
at July Term, 1891.

The jury returned the following special verdict:

"During the six months ending on the 30th day of June,
in the year of our Lord one thousand eight hundred and
ninety-one, the defendants, William A. French and George R.
French, were merchants residing in the city of Wilming-
ton, in the county of New Hanover and State of North Caro-
lina, and as co-partners in trade were engaged in the busi-
ness of buying and selling goods, wares and merchandise
under the firm name and style of George R. French & Sons;
that during the said six months the defendant purchased in
other States, and brought into the State of North Carolina
and there sold, a large quantity of goods, wares and mer-
chandise which were not farm products; that during the
said six months the said defendants made no purchase of
goods, wares or merchandise of any kind within the State
of North Carolina; that all of the purchases so made by them
out of the State were of articles not specially taxed by the
act of the General Assembly of said State, ratified the 9th

day of March, A. D. 1891, and entitled "An Act to Raise Revenue;" and that the said defendants, not being transient dealers, did not within ten days after the 1st day of July, A. D. 1891, deliver to the Clerk of the Board of County Commissioners of said county of New Hanover a sworn statement nor any statement of the total amount of his purchases out of the said State for the preceding six months, ending the 30th day of June, A. D. 1891,

"But whether or not, upon all the facts aforesaid by the said jurors so found the defendants are guilty of the offence with which they stand charged the jurors aforesaid are altogether ignorant, and thereupon pray the advice of this Honorable Court. And if upon all the facts aforesaid by the jurors aforesaid so found it shall appear to the Court that the defendants are guilty of the offence wherewith they stand charged, then upon their oath they find and say that they are guilty in manner and form as they stand charged. But if upon the said facts it shall appear to the Court that the defendants are not guilty of said offence wherewith they stand charged, then the said jurors do find and say that they are not guilty thereof."

His Honor having instructed the jury that upon the facts found by them the defendants were guilty, the jury returned a verdict of "*Guilty.*" It was adjudged that each of the defendants be fined the sum of one dollar and to pay the costs in this prosecution. From this judgment the defendants appealed.

*The Attorney General* and *Mr. A. M. Waddell*, for the State.
*Messrs. George Davis* and *George Rountree*, for defendants.

CLARK, J.: By the Act to Raise Revenue (Laws of 1891, ch. 323, § 22), it is enacted as follows: "Every merchant, jeweler, grocer, druggist, or other dealer, who shall buy and sell goods, wares and merchandise of whatever name or descrip-

tion, not specially taxed elsewhere in this act, shall, in addition to his *ad valorem* tax upon his stock, pay as a license tax one-tenth of one per centum on the total amount of his purchases in or out of the State (except purchases of farm products from the producer) for cash or credit, whether such persons herein mentioned shall purchase as principal or through an agent or commission merchant "

The special verdict brings the defendants completely within the provisions of the act, and finding, among other facts that the defendants purchased goods in other States, brought them into this State and sold them here, but made no purchases within this State.

The policy or advisability of such taxation rests with the legislative branch of the government alone. The sole question committed to the Courts is as to the Constitutional power of the Legislature to lay the tax.

It is conceded by the learned counsel of the defendants that such tax is not a property tax, but as truly stated on the face of the act is a license tax for the privilege of carrying on the business specified. Such license tax is not prohibited by the Constitution of North Carolina, but is expressly authorized by section 3, article 5 thereof. *Albertson* v. *Wallace*, 81 N. C., 479; *State* v. *Cohen*, 84 N. C., 771. Nor is this mode of taxation forbidden by the Fourteenth Amendment to the United States Constitution, which guarantees to all persons the equal protection of the law. It has been repeatedly held that the Fourteenth Amendment in nowise affects the right of the State to adjust its system of taxation in accordance with its own Constitution; " to classify property for taxation, subjecting one kind of property to one rate of taxation and another kind to another rate, distinguishing between franchises, licenses and privileges, and visible and tangible property, and between real and personal property." *Insurance Co.* v. *New York*, 134 U. S. Rep., 594 (606); *Railroad* v. *Pennsylvania, Ibid*, 232 (237). Both of these cases are cited and approved

by the same Court in a very recent case, *Express Co.* v. *Seibert*, in which the opinion was filed January 4th, 1892.

The defence, indeed, rests its case upon the position that the tax, so far as it respects goods purchased in other States and brought into this State, is void, as being in violation of the Federal Constitution, Art. 1, § 8, which gives to Congress the power to "regulate commerce with foreign nations and among the several States, and with the Indian tribes."

Under the decisions of the Supreme Court of the United States, if the "business," the carrying on of which is made liable to the tax, was that of interstate commerce, such as the offering for sale, or selling goods in one State to be shipped to the buyer who is in another State, as in *Robbins* v. *Shelby Taxing District*, 120 U. S. Rep., 480 (known commonly as the "Drummers'" Case), or if this impost was laid on the transportation of passengers or freight from one State to another (State Freight Cases, 15 Wallace, 232; Freight Discrimination Cases, 95 N. C., 428 and 434), or the transmission of telegrams across State lines (*Leloup* v. *Mobile*, 127 U. S. Rep., 640), such tax would be inhibited. But the business here subjected to the privilege tax is neither, by the terms of the law nor in its purport, to be gathered by any reasonable construction, "interstate dealings." The tax is not on any dealings between the parties outside of the State and the defendants within the State, nor on the transportation of goods into the State. The "business" taxed, and intended to be taxed, is that of "buying and selling goods, wares and merchandise," *i. e.*, carrying on a mercantile business *in this State*. The fact that such trade or occupation exercised in this State, is carried on in goods, wares or merchandise which had their origin out of the State, cannot make it "interstate commerce." The commerce is "intrastate." It is carried on in this State between the defendants and other parties in the State. It is an occupation or trade exercised here under North Carolina laws, and protected by them from violence and illegal inter-

ference, from robbery and thieves. Should the purchaser of "goods, wares and merchandise" from the defendants subsequently ship the goods to another State, this would not make the dealing between them "interstate," even though the defendants, at the time of such sale, knew of the buyer's intention to so ship the goods. *Brown* v. *Houston*, 114 U. S., 622. Neither, for like reasons, could the fact that the "occupation" taxed deals in merchandise, some or all of which originated elsewhere than in North Carolina, make it "interstate" traffic. *Woodruff* v. *Parham*, 8 Wall., 123. The interstate dealings were terminated when the goods were delivered at the store of the defendants. The "business" subsequently carried on of vending and disposing of them is intrastate traffic, upon which the State can levy its license tax. The tax is not laid on the purchases nor on the sales. It is laid as a "license tax" on every "merchant," etc., who shall "buy and sell goods, wares and merchandise," evidently meaning to tax the *occupation* of carrying on such business *in this State.* As a mode merely of graduating the tax by some approximation to the volume of business done (which is just), it is provided that such license tax shall be "one-tenth of one per centum on the total amount of purchases in or out of the State." In the late case of *State of Maine* v. *Grand Trunk Railway of Canada*, U. S. Supreme Court, 12 Supreme Court Rep., 120 (opinion filed December, 1891), this is adverted to, and the Court say: "This ruling (of the Court below, which is reversed) was founded on the assumption that a reference by the statute to the transportation receipts and to a certain percentage of the same, in determining the amount of the excise tax, was, in effect, the imposition of the tax upon such receipts, and, therefore, an interference with interstate and foreign commerce. But a resort to those receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be

levied, and we are unable to perceive in that resort any inter-
ference with transportation, domestic or foreign, over the road
of the railroad company, or any regulation of commerce
which consists in such transportation. If the amount ascer-
tained were specifically imposed as the tax, no objection to
its validity would be pretended. And if the inquiry of the
State as to the value of the privilege were limited to the
receipts of certain past years, instead of the year in which
the tax is collected, it is conceded that the validity of the tax
would not be affected, and if not, we do not see how a refer-
ence to the results of any other year could affect its charac-
ter. There is no levy by the statute on the receipts them-
selves, either in form or in fact. They constitute, as said
above, simply the means of ascertaining the value of the
privilege conferred. This conclusion is sustained by the
decision in *Insurance Co.* v. *New York*, 134 U. S. Rep., 594."
And the Court go on to cite with approval from the latter
decision the following: "The validity of the tax can, in no
way, be dependent upon the mode which the State may deem
fit to adopt in fixing the amount for any year which it will
exact for the franchise. No constitutional objection lies in
the way of a legislative body prescribing any mode of meas-
urement to determine the amount it will charge for the priv-
ilege it bestows."

The tax in our case is not on the business of buying goods
out of the State, but on the business of buying and selling
goods *in* the State irrespective of the place of origin of the
goods, and the extent of the purchases, whether "in or out
of the State," is only referred to as a basis by which to meas-
ure the tax which shall be levied on the business proportion-
ate with such approximation to its volume. It is admitted
that there is no *discrimination* against goods bought out of
the State, and the sole question is whether the State in taking,
as the basis of a license tax, the value of the goods dealt in,
must exclude the value of goods manufactured or raised out

of the State. If this were so, no license tax could be imposed for merchandising in this State when the articles dealt in were manufactured in other countries or other States, or were the products of a soil other than our own, leaving the full weight of the tax to fall upon the privilege of dealing in articles manufactured, or the products of the soil in this State. This would require a *discrimination* against our own citizens, and is not within the letter or spirit of the Constitution. The power of the State to exact a license tax from its own citizens doing business in its borders is beyond question, and a discrimination *in favor* of non-residents is as much forbidden as a discrimination *against them*, by the United States Revised Statutes, 1977: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts etc., and shall be subject to like punishments, pains, penalties, *taxes, licenses* and exactions of every kind, and to no other."

The rule deducible from the authorities seems to be that if the dealings or transactions are between parties in different States, or the transportation of freight or passengers from one State to another, a tax by State law is prohibited, irrespective of whether there is "discrimination" or not; but where the tax is on an "occupation" carried on in a State, or on property therein, the State has power to levy the tax, unless it "discriminates" against the articles brought from other States, with the sole exception that the sale of such articles in the original package cannot be taxed by the State. Even this exception, which is laid down in *Leisy* v. *Hardin*, 135 U. S., 100, is strongly controverted by the able dissenting opinions of Justices GRAY, HARLAN and BREWER, in that case.

DAVIS, J. (concurring): The statute under which the defendants are taxed makes no discrimination in favor of

the citizens of the State against the citizens or property of other States, and in my opinion the only purpose of the framers of the Federal Constitution was to prevent any discriminations which local interest might suggest in favor of resident citizens of a State against non-resident citizens. I do not think it was the purpose of the Constitution of the United States to confer upon Congress, by enactment or upon the Courts by construction, any authority to give non-resident citizens doing business in another State rights, privileges or exemptions which may be lawfully denied to resident citizens who are taxed to support the State, and to protect non-resident as well as resident citizens in the discharge of their business. I think a provision of the Constitution conferring upon Congress the power to discriminate by exempting non-resident citizens doing business in a State from duties or burdens which may be lawfully imposed on resident citizens engaged in the same business, would have shocked the most ultra advocate of Federal power; and I do not think that one of the thirteen States would have sanctioned a Constitution granting such authority to the Federal government directly or by any fair implication; and the Federal government has no powers except those delegated by the Constitution expressly or by fair implication.

Affirmed.