## LACY v. PACKING CO.

(Filed April 5, 1904).

TAXATION—*Interstate Commerce—Acts 1903, ch. 247, sec. 56—Const. U. S., Fourteenth Amendment—Const. N. C., Art. V, sec. 3—Constitutional Law—Licenses.*

> An act taxing every meat packing house doing business in the state $100 for each county in which such business is carried on is valid.

ACTION by B. R. Lacy, State Treasurer, against the Armour Packing Company, heard by *Judge E. B. Jones,* at September Term, 1903, of the Superior Court of BUNCOMBE County. From a judgment for the plaintiff the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the plaintiff.
*T. B. Felder* and *Pou & Fuller,* for the defendant.

CLARK, C. J.   This action calls in question the constitutionality of section 56, chapter 247 Laws 1903, which chapter provides in Schedule B as one of the license taxes "for carrying on business" (section 26) the following: "Section 56.   Packing houses.   Upon every meat packing house doing business in this State one hundred dollars for each county in which said business is carried on."   From the facts agreed it appears that the defendant was incorporated in New Jersey but has its principal office and place of business in Kansas; that it has property in this State; that a meat packing house is a place where the business of slaughtering animals and dressing and preparing the products of their carcasses for food and other purposes is carried on; the products thus prepared consist of fresh and cured meats, such as hams, dry salt sides, bacon, lard, beef extracts, glue, blood, tankage, etc.; that the defendant does not slaughter, dress or manufacture its products in this State, but after the animals are slaughtered, dressed and prepared for food or other commercial purposes by the defendant in Kansas, such product is shipped in bulk to five points in this State (Wilmington, Greensboro, Asheville, Charlotte and Fayetteville), where the defendant has cold-storage plants and warehouses, and sold from such storage plants some of such products to parties in this State and some to parties outside of this State; that part of said products shipped to the defendant's cold-storage warehouse in Asheville (whence this appeal comes) remain there until disposed of in due course of trade on orders taken and received after said products have been stored or placed in said warehouse or cold-storage plants.   At such of said five points in this State where the defendant maintains a warehouse and cold-storage plant it has one or more employees, *i. e.,* bookkeepers, stenographers, shipping clerks, salesmen, drivers, laborers who box said meats and who wrap and crate goods for delivery as they are sold.   There

are in said city of Wilmington and other cities of said State, commission merchants, brokers and butchers who sell by wholesale and retail in competition with the Armour Packing Co. (and who are not engaged in a meat packing house business in North Carolina or elsewhere), fresh, cured and salt meats and other products that have been manufactured from the carcasses of slaughtered animals for food and commercial purposes, and under the laws of North Carolina said commission merchants, brokers and butchers are not amenable to the tax levied under section 56 of said Revenue Act of 1903. At all points in North Carolina where the Armour Packing Company is engaged in business, and at various other places in said State, there are engaged in business, as the Armour Packing Company is engaged, packing houses which pack articles of food other than meat and offer them for sale in said State, such as peas, beans, tomatoes, corn, pumpkins, fruits, fish, oysters, etc. The products of said packing houses are articles of food and commerce and are sold in the State of North Carolina through agents, brokers, wholesale and retail merchants, just as the products packed by the Armour Packing Company are sold.

This is a statement of all the material facts agreed, as stated in the "action submitted without controversy." Upon these facts the defendant contends (1) that it is not engaged in doing a packing house business in this State. This may be true, but upon the facts agreed the packing house is "doing business" here, and the license tax is laid upon whatever business it is doing; (2) that the tax is an interference with interstate commerce; (3) that the tax contravenes section 3, Article V of the Constitution of North Carolina, which requires taxation "by uniform rules"; (4) that the tax is forbidden by the Fourteenth Amendment to the Constitution of the United States; (5) that singling out "meat

packing houses" for taxation is arbitrary or class legislation and prohibited by both State and Federal Constitutions. These contentions were held adversely to the defendant who was adjudged to pay the tax and appealed.

If the business of the defendant was solely that of shipping food products into this State, consigned directly to purchasers on orders previously obtained, it is clear that this would be interstate commerce and a tax laid by the State upon such business would be illegal. But the defendant does a large business within the State, the selling of products already stored here on orders received after these products are thus stored. The tax is laid upon every meat packing house "doing business in this State." The evident meaning of the Legislature is to tax the agency "doing business" within this State and not to lay any tax upon the interstate commerce of shipping products into the State to be directly or indirectly delivered to purchasers whose orders were obtained before the goods were shipped.

In *Express Co. v. Seibert,* 142 U. S., at p. 350, it is said that a tax "on business within the State can not be made to mean business done between that State and other States." The appellant contends that a packing house can not be considered as doing business in this State unless it actually engages, at some point in this State, in the business of maintaining a place where the slaughtering of animals and the dressing and preparing of the products of their carcasses for food and other commercial purposes is carried on. The record shows that the appellant ships its food products into this State in carload lots, and deposits them in warehouses or cold-storage plants where they remain until disposed of in due course of business on orders taken after the goods have thus become intermingled with property in this State. The company also maintains at various points in North Carolina, in addition to its warehouses and cold-storage plants,

offices and sales places and agencies where it has in its employment bookkeepers, stenographers, shipping clerks, salesmen, drivers, laborers who box said meat and who wrap and crate goods for delivery as they are sold." No question is raised here or passed upon as to the right to tax the sale of goods shipped here and resold in the original packages. The appellant is certainly "doing business" in this State, and it can only do this as a matter of comity, for the Legislature has the power to exclude foreign corporations altogether or to prescribe such conditions as it sees fit. 3 Clark & Marshall Private Corporations, section 844, p. 2695 and cases cited; 2 Cook Corp., section 696-700; *Range Co. v. Carver,* 118 N. C., at p. 335; *Ins. Co. v. Edwards,* 124 N. C., at p. 121; *Commissioners v. Tobacco Co.,* 116 N. C., 441. This license tax is the condition upon which the defendant is permitted to do this *intra*-state business above recited.

That this tax is not an interference with interstate commerce, we have a case exactly in point, *Osborne v. Florida,* 164 U. S., 650 (filed January, 1897), in which it is held that "the license tax imposed upon express companies *doing business* in Florida, as construed by the Supreme Court of that State, applies solely to business of the company within the State, and does not apply to or affect its business which is interstate in its character, and, being thus construed, the statute does not in any manner violate the Federal Constitution. The construction of the State statute by its highest court is not open to review." The present case is stronger against the defendant, for, unlike the appellant in *Osborne v. Florida,* this defendant is not a common carrier. See citations of *Osborne v. Florida,* 12 Rose's Notes, 917.

The defendant *doing business* in this State and the license tax being exacted only by virtue of its *intra*-state business, the first two grounds of objection are overruled. Nor is

the third exception any stronger, which is that the tax violates section 3, Article V of the State Constitution, which requires that "laws shall be passed for taxing by a uniform rule." That section has often been passed upon, and it is settled that "*A tax is uniform when it is equal upon all persons belonging to the described class upon which it is imposed.*" It has been held that the tax may be different upon a dealer in whiskey by retail and a dealer in the same article by wholesale, if uniform as to each class. *Gatlin v. Tarboro,* 78 N. C., at p. 122; on tobacco buyers as a specific class, *State v. Irvin,* 126 N. C., 989; on hotel keepers as a class, graduated in amount by the gross receipts and exempting those whose yearly receipts are less than $1,000, *Cobb v. Commissioners,* 122 N. C., 307; on the total amount of purchases by a merchant in or out of the city, except purchases of farm products from the producer, *State v. French,* 109 N. C., 722, 26 Am. St. Rep., 590; in cities and towns, according to population, *State v. Green,* 126 N. C., 1032; *State v. Carter,* 129 N. C., 560. In *State v. Stevenson,* 109 N. C., at p. 734, 26 Am. St. Rep., 595, it is said: "It is within the legislative power to define the different classes and to fix the license tax required of each class. All the licensee can demand is that he shall not be taxed at a different rate from others in the same occupation as classified by legislative enactment." This is stated as a universal rule, 1 Cooley Taxation (3 Ed.), p. 260.

The fourth exception is that the act violates the Fourteenth Amendment (which in these latter days it is diligently sought to construe into a *quo minus* and *acetiam* device by which every question may be drawn within the jurisdiction of the Federal Courts). It has been repeatedly decided by the Supreme Court of the United States that this section of the Constitution does not forbid the classification of property or persons for the purposes of taxation, but merely

compels the equal application of the law to all members of the same class, when the classification is based upon reasonable ground and not an arbitrary selection. *Railroad v. Ellis,* 165 U. S., 165; *Telegraph Co. v. Indiana,* 165 U. S., 304; *Railroad v. Iowa,* 94 U. S., 164; *Dowe v. Biedleman,* 125 U. S., 680; *Insurance Co. v. New York,* 134 U. S., 606; *Railroad Tax Cases,* 115 U. S., 321. *Com. v. Clark,* 195 Pa. St., at p. 638, 86 Am. St. Rep., 694, 57 L. R. A., 348, held, as has been held by this Court, that a separate classification of wholesale dealers from that of retail dealers is not an illegal and arbitrary classification. *Cable Co. v. State,* 46 N. J. E., 270, 19 Am. St. Rep., 394; *State v. Applegarth,* 81 Md., 293, 28 L. R. A., 812 (imposing a license tax on oyster packers).

The fifth exception cannot be sustained. The Legislature is sole judge of what subjects it shall select for taxation (other than a property tax, which must be uniform and *ad valorem*) and the exercise of its discretion is not subject to the approval of the judicial department of the State. A very full discussion of the whole matter, concluding as above, will be found in *State v. Packing Co.,* 110 La., 180.

No Error.