In S. v. Worth, 116 N.C. 1010, the Court defines the term "trades" as including "any employment or business embarked in for gain or profit," and while the Constitution, Art. V, sec. 3, is mandatory upon the General Assembly to levy a tax upon all property and by a uniform rule, the authority to tax trades is permissive only, and no rule as to the method is prescribed.
It has, however, been held that the rule of uniformity applies to the tax on trades, but only to the extent that it must be equal upon all persons belonging to the class upon which it is imposed. Gatlin v. Tarboro,78 N.C. 122; Lacy v. Packing Co., 134 N.C. 571.
The Legislature can lay a franchise or license tax on some callings, and it will not be illegal because some other occupations are not taxed. It can lay a fixed tax on some occupations and graduate the tax on others by the volume of business, or in any other mode it may deem fit. Cobb v.Commissioners, 122 N.C. 307; S. v. Stevenson, 109 N.C. 730; S. v.Carter, 129 N.C. 560; S. v. French, 109 N.C. 722; Albertson v. Wallace,81 N.C. 479.
It is within the legislative power to define the different classes upon which license taxes are to be levied, and fix the tax required of each class. All the licensee can demand is that he shall not be taxed at a different rate from others in the same occupation, as "classified" by legislative enactment. S. v. Stevenson, 109 N.C. 730; Rosenbaum v. NewBern, 118 N.C. 83, holding that a separate license tax may be imposed on merchants and those dealing in second-hand clothing; Schaull v. Charlotte,118 N.C. 733, holding brokers and pawnbrokers different classes upon which distinct license taxes may be imposed. Connor and Cheshire, p. 270.
Varying amounts may be assessed upon vocations or employments of different kinds (Worth v. R. R., 89 N.C. 291; S. v. (141)Worth, 116 N.C. 1007), and the Legislature may make selection and is not required to tax all trades. Lacy v. Packing Co., 134 N.C. 571.
The tax levied is presumed to be reasonable, and its reasonableness is usually within the discretion of the General Assembly. S. v. Danenberg, 151 N.C. 721.
Many illustrations of the exercise of this power in this State will be found in Connor and Cheshire on the Constitution, 263.
In R. R. v. Matthews, 174 U.S. 106, the Court, after recognizing the right to classify, says: "It is the essence of classification that upon the class are cast duties and burdens different from those resting upon the general public. The very idea of classification is inequality, so that it goes without saying that the fact of inequity in no manner determines the matter of constitutionality." *Page 114 
It was held in Life Association v. Mutter, 185 U.S. 327, that placing life companies in a different class from mutual benefit associations was not arbitrary and rested on sufficient reason, and in Field v. Asphalt Co., 194 U.S., that it was not the purpose of the fourteenth amendment to prevent the States from classifying the subjects of taxation.
In the Kentucky Railroad Tax case, 115 U.S. 337, the Court said, in sustaining a classification of property: "There is nothing in the Constitution of Kentucky that requires taxes to be levied by a uniform method upon all descriptions of property. The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods. The rule of equality, in respect to the subject, only requires that the same means and methods be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. There is no objection, therefore, to the discrimination made as between the railroad companies and other corporations in the methods and instrumentalities by which the value of their property is (142) ascertained.
It is also said in Gundling v. Chicago, 177 U.S. 188: "Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be, and to what particular trade, business, or occupation they shall apply, are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrarily, interfered with or destroyed without due process of law, they do not extend beyond the power of the State to pass, and they form no subject for Federal interference."
It must appear, however, that the classification has been made, and it must be based on some difference which bears a just and proper relation to the attempted classification. R. R. v. Ellis, 165 U.S. 165; Lacy v.Packing Co., supra; S. v. Danenberg, 151 N.C. 718.
The rule which should guide the courts in determining whether the legislative department has transcended its powers is also well established. In Ency., U.S. S.C. Reports, vol. 4, pp. 254-5, the author cites many authorities in support of the principle that, "The theory that parties have an appeal from the Legislature to the courts, and that the latter are given an immediate and general supervision of the constitutionality of the acts of the former, is not true. Whenever, in pursuance of an *Page 115 
honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any Legislature, State or Federal, and the decision necessarily rests on the competency of the Legislature to so enact, the court must, in the exercise of its solemn duties, determine whether the act be constitutional or not. But such an exercise of power is the ultimate and supreme function of courts. It is legitimate only in the last resort, and as a necessity in the determination of a real, earnest, and vital controversy between individuals. . . . The judicial cannot prescribe to the legislative department of the Government limitations upon the exercise of its acknowledged powers. That power has been or may be abused, or that it has not been wisely exercised, or that the measures adopted are untimely and inexpedient and not the wisest, best, or most (143) appropriate means to a desired end, is no ground for declaring them void, so long as the Legislature had the power to do what it actually did. Within the limits of its powers, its discretion is absolute and subject to no review by the courts. Courts do not sit in judgment on the wisdom of legislative or constitutional enactments. This is a general principle; but it is especially true of Federal courts when they are asked to interpose in a controversy between a State and its citizens."
We deduce from these authorities:
(1) That the plaintiff is engaged in a trade within the meaning of the Constitution.
(2) That the General Assembly has the power to tax trades.
(3) That in the exercise of this power the General Assembly is not required to tax all trades, but may tax some and refuse to tax others.
(4) That the General Assembly has the power to make classifications subject to the limitation that the tax must be equal on those in the same class, and that there must be some reason for the difference between the classes.
(5) That it has the power to provide regulations determining the different classes, and that these will not be interfered with unless utterly unreasonable.
(6) That if the General Assembly has exceeded its power, it is the duty of the courts to so declare, but that every presumption is in favor of the proper exercise of the power of the General Assembly, and the courts will not declare otherwise except in extreme cases and from necessity.
Applying these principles, we are of opinion that the differences between peddlers on foot, and with vehicles, peddlers of proprietary medicines with free attractions and those without, itinerant salesmen who expose for sale on the streets or in a house rented temporarily (144) *Page 116 
for that purpose, and the other salesmen mentioned, furnish reasonable grounds for the classifications made in the statute. A similar statute was considered in Servonitz v. State, 133 Wis. 231, where the Court gives the reasons underlying the classifications made: "No reason which appeals very strongly to our judgment is advanced why peddlers should not be classified, as in the law in question, according to their facilities for going from place to place and carrying their wares. The perils to be guarded against in respect to the occupation and the contributions that may reasonably be required to the public revenue, strongly suggest, if they do not demand, such classification. Certainly the Legislature, within the boundaries of reason, way well have thought that a person traveling about the country plying the vocation of a peddler with an equipment consisting of a span of horses and a wagon should, both as a matter of police regulation and taxation, pay a greater license fee than a person plying the same trade, but traveling about from place to place on foot. Not because the former would be more liable to be dishonest than the latter, but because of the greater opportunity and liability thereof in the one case than in the other, and the corresponding greater liability in the one case than in the other of the harm, if committed, being difficult of redress or going entirely without remedy; again, not because the person, as such, traveling with a team should be taxed more than one traveling on foot, but since the one in all reasonable probability would conduct a much greater business than the other, the tax exaction should bear some practical relation thereto."
The first and fourth exceptions or exemptions may be considered together.
Keeping in mind that the General Assembly has the power to classify, and that it is not required to tax all trades, these exceptions or exemptions amount to no more than the exercise of the power of classification.
In other words, if the General Assembly has the power to classify, based on the difference in the business engaged in, it may place proprietary medicines in one class, and books, fuel, etc., in another; it (145) may tax one of these classes one amount and the other a different amount; or it may tax one and refuse to tax the other.
It will also be observed that no one engaged in selling the articles enumerated in these exceptions can come in competition with the plaintiff, who is licensed to sell medicinal and proprietary medicines.
The same reasoning applies to the fifth exception or exemption, and further as to this, that "drummers selling by wholesale" do not come within the definition of the term "peddler" and would not have been included if not specially exempted.
The second, third, and sixth exemptions will be considered together. *Page 117 
In 21 Cyc., 365, the author says: "It is generally held to be allowable to exempt from the operation of the statute certain persons who peddle their own products or manufactures, such as farmers, butchers, and manufacturers; persons under physical disability, and soldiers. So it is held to be proper for the Legislature in the enactment of such statutes to discriminate in favor of certain articles by not requiring a license to peddle them," and many cases are cited in the note to support the text; but there is also much authority to the contrary, which is referred to and discussed in the learned brief of the appellant, notably S. v. Garbroski,11 Ill. 496; S. v. Sherdoi, 75 Vt. 277; S. v. Whitcomb, 122 Wis. 110, holding the exemption of Union soldiers from a peddler's tax to be void, and Laurens v. Anderson, 75 S.C. 62, where there is a like holding as to Confederate soldiers. But it is not necessary for us to determine the constitutionality of these provisions, as we are of opinion they are not so intimately connected with the other parts of the statute that they determine the validity of the whole, and courts, out of deference to a coordinate department of Government, always refrain from passing on a constitutional question except from necessity.
In Riggsbee v. Durham, 94 N.C. 800, the Court approves the doctrine stated by Judge Cooley, that "the unconstitutional do not affect the constitutional parts of a statute, `unless all the provisions (146) are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that the Legislature would have passed the one without the other.' Const. Lim., 178, 215, with cases cited in notes 2 and 3."
The same principle is declared in Supervisors v. Stanly, 105 U.S. 312, where the Court says: "The general proposition must be conceded, that in a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain. If the valid and invalid are capable of separation, only the latter are to be disregarded. In R. R. Companies v. Schutte (103 U.S. 118), decided at the last term, this point was pressed upon us with much earnestness, and its decision was necessary to the judgment of the Court. `It is contended,' said the Court, `that as the provision of the act in respect to the execution and exchange of the State bonds is unconstitutional, the one in relation to the statutory lien on the property of the company is also void and must fail. We do not so understand the law.' And yet this was a case in which the scheme of exchanging the bonds of the State for the bonds of the company, in order that the company might get the benefit of the better credit of the State, was *Page 118 
accompanied by a mortgage created alone by the statute in favor of the State as her security; and the Court, while holding that the exchange of bonds was void, as being in conflict with the Constitution of the State of Florida, held that the mortgage which secured the bonds of the company, and which was only a mortgage by operation of the same statute, was valid."
The Confederate soldier is entitled to consideration and recognition at the hands of the General Assembly, and of the State; but it is now nearly fifty years since the close of the war, and the gray line has grown so thin that those in it bear so small a proportion to the population of the State that we cannot think the General Assembly would have refrained from taxing all peddlers because to do otherwise might impost a tax on the few soldiers who might wish to follow the (147) occupation of a peddler; and the same may be said of the infirm and blind.
We are also of opinion that there is no interference with the commerce clause of the Federal Constitution, as it appears from the agreed facts that the articles were shipped in large packages to the plaintiff, which were opened and the separate articles disposed of. Machine Co. v. Gage,100 U.S. 675; May v. New Orleans, 178 U.S. 497; Austin v. Tenn.,179 U.S. 352; Cook v. Marshall, 196 U.S. 269.
In the Machine Company case a Connecticut corporation, manufacturing sewing machines in that State, maintained an office in the State of Tennessee. The company sent out, for the purpose of selling or peddling machines, an agent who traveled through the country exhibiting and offering for sale the company's machines, and it was held that the agent was liable for the payment of a peddler's license tax. The distinctive fact in that case was that the agent would either sell the machine he was exhibiting or would send an order to be filled from stock in the possession of the State agency within the State of Tennessee. The machine being within the State at the time of the sale or contract of sale, the transaction was not one of interstate commerce.
In the May case May Co., merchants at New Orleans, were engaged in the business of importing goods from abroad and selling them. In each box or case in which they were brought into this country there would be many packages, each of which was separately marked and wrapped. The importer sold each package separately. The city of New Orleans taxed the goods after they reached the hands of the importer (the duties having been paid) and were ready for sale. Held, that the box, case, or bale in which the separate parcels or bundles were placed by the foreign seller, manufacturer, or packer was to be regarded as the original package, and when it reached its destination for trade or *Page 119 
sale and was opened for the purpose of using or exposing to sale the separate parcels or bundles, the goods lost their distinctive character as imports and each parcel or bundle became part of the general (148) mass of property in the State and subject to local taxation.
In the Austin case it was held that cigarettes, put up ten to the package and shipped in a large package or basket, became the subject of State tax and regulation when the large package reached its destination, and this is approved in the Cook case.
The discretion vested in the commissioners is necessary in the administration of statutes like the one before us, and will not be interfered with unless exercised arbitrarily; but the plaintiff cannot complain of this feature of the statute, as license has been issued to him.
The questions presented have not been free from difficulty, but upon the whole record we are of opinion that the judgment must be affirmed.
Affirmed.
Cited: S. v. Davis, 171 N.C. 813.