BELK BROTHERS COMPANY OF CHARLOTTE v. A. J. MAXWELL,
COMMISSIONER OF REVENUE.

(Filed 1 February, 1939.)

1. **Taxation § 30—"Belk" stores held a chain store as defined by statute and liable for chain store license tax.**

    "Belk" stores, having similarity of name and benefit in whole or in part of group purchase of merchandise and perhaps common management, *held* to come within the statutory definition of a chain store, and by interpolating such definition in the statute above the tax-levying provision, the statute imposes the chain store license tax on the Belk Company for each of its stores according to the schedule set out in the statute. Section 162 of the Revenue Act of 1933.

2. **Taxation § 23: Statutes § 5a—**

    In construing a revenue statute, a definition of those subject to its provisions may be interpolated above the tax-levying provision to give the statute meaning and effectuate the obvious intention of the Legislature.

3. **Constitutional Law § 4b—**

    It is peculiarly the function of the lawmaking body to levy assessments and to devise a scheme of taxation.

4. **Taxation § 2c—Classification of chain stores for taxation held not unreasonable or arbitrary as applied to plaintiff corporation.**

    The stores upon which plaintiff corporation paid under protest the chain store license tax imposed by sec. 162 of the Revenue Act of 1933, were separately incorporated, but had one president, similar names, standardization of form and method of advertising, commonalty of brand or label, group purchase of merchandise in whole or in part, uniformity of accounting, common knowledge, general integration and financial aid by plaintiff corporation in advancing expenses, etc. *Held:* The advantages enjoined by the operation of the stores under such methods are sufficient to sustain their classification as a chain store and the imposition of the chain store license tax, and the classification as to plaintiff corporation is reasonable and not arbitrary.

BELK BROTHERS CO. *v.* MAXWELL, COMR. OF REVENUE.

**5. Same—**

> The General Assembly has the right to classify businesses, trades and professions for the purpose of taxation, subject to the limitation that the classification must be reasonable and not arbitrary.

SEAWELL, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Sinclair, J.,* 26 April, 1938.   From WAKE.

Civil action to recover "chain-store" license tax paid under protest, and alleged to have been wrongfully and illegally collected.

On 28 June, 1934, the plaintiff, in response to demand therefor, paid to the defendant, under protest, $3,620 balance of assessment as a "chain-store" license tax for the fiscal year 1 June, 1933, to 1 June, 1934, on 46 "Belk" Stores in North Carolina, and immediately demanded refund thereof, which was "respectfully declined."   In apt time and pursuant to the provisions of the statute, plaintiff brings this action to recover back the tax so paid.

On the hearing, a jury trial was waived and the case was submitted to the court on an agreed statement of facts, which, in summary, follow:

1. The tax in question was collected and paid under section 162 of the Revenue Act of 1933, the pertinent provisions of which follow:

"Sec. 162.   *Branch or Chain Stores.*   Every person, firm or corporation engaged in the business of operating or maintaining in this State, under the same general management, supervision or ownership, two or more stores or mercantile establishments where goods, wares and/or merchandise is sold or offered for sale at wholesale or retail shall be deemed a branch or chain store operator, shall apply for and obtain from the Commissioner of Revenue a State license for the privilege of engaging in such business of a branch or chain store operator, and shall pay for such license a tax according to the following schedule."

(Schedule omitted, as amount of tax not in dispute.)

"The term 'chain store' as used in this section shall include stores operated under separate charters of incorporation, if there is common ownership of a majority of stock in such separately incorporated companies and/or if there is similarity of name of such separately incorporated companies and/or if such separately incorporated companies have the benefit in whole or in part of group purchase of merchandise or of common management."

2. The plaintiff is engaged in the general retail mercantile business in the cities of Charlotte, Mooresville and Kings Mountain, this State, operating therein four units, upon which it has paid and admits its liability for a "chain-store" license tax.

3. The stores in question herein, 46 in number, are scattered throughout the State of North Carolina and bear the name "Belk" in some form

or combination, as specifically set out and shown in paragraph 13 of the agreed facts. Each of the stores listed (with the exception of three) is a corporation organized under the State law, and with certain minor exceptions not here in controversy, none of the said corporations owns stock in any of the others.

4. W. H. Belk owns stock in each of the corporations, but neither he nor any other person, firm or corporation, owns a majority of the stock in any of them (except the plaintiff owns a majority of the stock in two of the units mentioned in paragraph 2 above, and controls the other two). The said W. H. Belk participated in the organization of all of the corporations, is president of each, and a member of each board of directors, otherwise, the directors are composed of different individuals.

5. The said stores are generally referred to by the public as "Belk" Stores. They generally use wrapping paper upon which is printed: "Belk Stores, the South's Largest Distributors of Reliable Merchandise. 145 Retail Department Stores."

6. Each of the corporations furnishes to W. H. Belk, its president, a weekly trial balance statement, which in turn is turned over to the common accountant or auditor, employed jointly by all the corporations, with offices in Charlotte. The salaries of the auditor and his assistants are first paid by the plaintiff, and at the end of each quarter, the several corporations refund these expenses to the plaintiff, with interest, on a pro rata basis. The auditor also prepares annually an audit of the financial affairs of each of the corporations, and likewise prepares its State and Federal income tax returns.

7. The said corporations jointly maintain and support a "Buying Office" in New York City, the expenses of which are handled in the same manner as the auditor's office in Charlotte. Group purchases may be effected through the Buying Office, though this is optional with the individual store. Each corporation is likewise permitted to purchase and sell articles of merchandise labeled or branded "Belk."

8. Lastly, it is "stipulated and agreed that if the court should determine the plaintiff or any or all of the corporations or stores listed in paragraph 13 above are liable for the chain-store tax imposed by section 162 of the 1933 Revenue Act, then the plaintiff shall not recover of the defendant the $3,620 heretofore paid by the plaintiff to the defendant."

The court being of opinion that upon the pleadings and the facts agreed, the plaintiff was not entitled to recover the amount of the tax paid under protest, entered judgment dismissing the action. From this ruling, the plaintiff appeals, assigning error.

*Guthrie, Pierce & Blakeney for plaintiff, appellant.*

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for defendant, appellee.*

STACY, C. J.    The intention of the lawmaking body is not difficult of discernment, albeit the language used to express it is awkward enough. Indeed, our principal concern is to ascertain whether the tax-levying provision of the statute covers every "chain store" as subsequently defined in the act. *Harwood v. Maxwell, Comr. of Revenue,* 213 N. C., 55, 195 S. E., 54.    That the plaintiff comes within the statutory definition of a chain store seems clear, but whether the act is so drawn as to levy a chain-store license tax on the 46 "Belk" Stores having similarity of name and benefit in whole or in part of group purchase of merchandise and perhaps common management is the question for decision. However, if the statute be read with the definition of the term "chain store" interpolated above the tax-levying provision, where it really belongs and was intended to be inserted, which is permissible in our quest for the legislative intent, most of the difficulty would seem to be somewhat minimized.    It is true, this rearrangement presents some awkwardness of expression, nevertheless it gives significance and meaning to the obvious purpose and intention of the General Assembly, which, after all, is the real heart of the statute.    *Trust Co. v. Hood, Comr.,* 206 N. C., 268, 173 S. E., 601.    Moreover, in dealing with a fiscal system, and more particularly in interpreting a revenue act, "some play must be allowed for the joints of the machine." *M. T. & K. Ry. Co. v. May,* 194 U. S., 267.    It is peculiarly the function of the lawmaking body to levy assessments and to devise a scheme of taxation.    *Bank v. Doughton,* 189 N. C., 50, 126 S. E., 176.

The constitutionality of section 162, as it appeared in the Revenue Act of 1929, was upheld in *Tea Co. v. Maxwell,* 199 N. C., 433, 154 S. E., 838, and this ruling was affirmed by the Supreme Court of the United States in a memorandum opinion, 284 U. S., 575, on authority of *State Board of Tax Comrs. v. Jackson,* 283 U. S., 527, 73 A. L. R., 1464.

The only change made in the section in 1933 was the addition of the definition of the term "chain store," following the schedule of rates. This enlargement or expansion was clearly made for the purpose of bringing the "Belk" Stores, and others similarly situated, within the purview of the chain-store license tax.

The question then arises whether this application of the statute operates unreasonably or arbitrarily against the plaintiff.    *Hans Rees' Sons v. North Carolina,* 283 U. S., 123.    We cannot say that it does.

All the advantages and perhaps others accruing from the operation of chain stores as pointed out in the *Jackson case, supra,* and there held to be sufficient to warrant the imposition of a chain-store license tax, would seem to be present here, where there is: singularity of president; similarity of name; standardization of form and method of advertising; commonalty of brand or label; group purchase of merchandise in whole

or in part; uniformity of accounting; common knowledge; general integration, and action by plaintiff as head of the chain in advancing expenses, etc. See *Great A. & P. Tea Co. v. Grosjean,* 301 U. S., 412, 81 L. Ed., 1193; *Fox v. Standard Oil Co.,* 294 U. S., 87; *Liggett Co. v. Lee,* 288 U. S., 517; *Maxwell v. Shell,* 90 F. (2d), 39, *certiorari* denied, 82 L. Ed., 552.

The power of the General Assembly to impose license taxes of the character here in question is undoubted, and the right of classification is referred largely to the legislative will, with the limitation that it must be reasonable and not arbitrary. *S. v. Elkins,* 187 N. C., 533, 122 S. E., 289; *Smith v. Wilkins,* 164 N. C., 135, 80 S. E., 168; *Clark v. Maxwell,* 197 N. C., 604, 150 S. E., 190, affirmed 282 U. S., 811.

The rule is authoritatively stated by *Hoke, J.,* in *Land Co. v. Smith,* 151 N. C., 70, 65 S. E., 641, as follows: "The power of the Legislature in this matter of classification is very broad and comprehensive, subject only to the limitation that it must appear to have been made upon some 'reasonable ground—something that bears a just and proper relation to the attempted classification, and not a mere arbitrary selection.' "

The observations made in *Brown-Forman Co. v. Kentucky,* 217 U. S., 563, would seem to be pertinent: "A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."

In *Liggett Co. v. Lee, supra,* it was pointed out that "there is a clear distinction between one owner operating many stores and many owners each operating his own store with a greater or less measure of cooperation voluntarily undertaken," and it was said the Legislature may make this distinction the occasion of classification for purposes of taxation, but it was not there held that the taxation of the voluntary as well as the integrated chain would be in excess of the legislative power. See *Fox v. Standard Oil Co., supra.*

The whole matter is summed up by *Mr. Justice Stone* in the pithy statement that "the equal protection clause does not forbid discrimination with respect to things that are different." *Puget Sound P. & L. Co. v. Seattle,* 291 U. S., 619. For full discussion of the subject and analysis of the authorities, see *Hurt v. Cooper,* 130 Tex., 433, 110 S. W., (2d), 896; *S. c.,* 113 S. W. (2d) (Tex. Civ. App.), 929; *Smith Co. v. Fitzgerald,* 270 Mich., 659, 259 S. W., 352.

It is stipulated in the concluding paragraph of the facts agreed that should liability be found in any respect, the action shall fail. Plaintiff

admits liability to the tax in question for four of the 46 "Belk" Stores, not here in controversy. We think the record supports the judgment imposing liability for the remaining 42. In the circumstances, the judgment of dismissal will be upheld.

Affirmed.

SEAWELL, J., took no part in the consideration or decision of this case.