<hr />

CITY OF RALEIGH v. J. R. JORDAN ET AL.

(Filed 19 June, 1940.)

1. **Taxation § 40d—Action to enforce lien for taxes under C. S., 7990, for year 1926 and years prior thereto held barred by ch. 181, Public Laws of 1933.**

An action by a municipality under C. S., 7990, to foreclose the lien for taxes for the years 1925 and 1926, is barred by the provision of chapter 181, section 7, Public Laws of 1933, since the Legislative intent to bar the enforcement of all liens for unpaid taxes for the year 1926 and the years prior thereto, under whatever guise attempted, is apparent from the use of the phrase "all tax liens" in the Act of 1933, and the fact that at the time of the passage of the act of 1933 foreclosure of tax sales certificates under C. S., 8037, was already barred, and the fact that the Act of 1933 provides for the refunding of taxes only for the years subsequent to 1926. The discretionary provisions contained in section 14 of the Act of 1933 were not applicable to plaintiff municipality.

2. **Same—**

The Legislature has the power to deal with the lien of taxes as it sees fit, and may determine when there should be a lien, when it should attach, and when it should cease.

STACY, C. J., dissenting.

BARNHILL and WINBORNE, JJ., concur in dissent.

APPEAL by plaintiff from *Williams, J.,* at March Term, 1940, of WAKE. Affirmed.

*P. H. Busbee and John G. Mills, Jr., for plaintiff.*

*R. W. Winston, Jr., for defendant Insurance Company.*

CLARKSON, J. This was a civil action instituted by the city of Raleigh under C. S., 7990, to enforce a lien for unpaid taxes for the years 1925 and 1926. Taxes for those years were levied on certain lots in the city of Raleigh then owned by J. R. Jordan and C. P. Grantham. These lots were subsequently acquired by the defendant, the Metropolitan Life Insurance Company, in 1931.

The cause was heard upon an agreed statement of facts. The court below held that under the provisions of ch. 181, Public Laws of 1933, the

taxes on this property for 1925 and 1926 were barred and uncollectible. Plaintiff appealed.

Section 7 of the Act of 1933 is in these words: "All tax liens held by counties, municipalities, and other governing agencies for the year one thousand nine hundred and twenty-six and the years prior thereto, whether evidenced by the original tax certificates, or tax sales certificates, and upon which no foreclosure proceedings have been instituted, are hereby declared to be barred and uncollectible."

It seems reasonably clear that it was the intention of the Legislature to bar the enforcement of liens for unpaid taxes for the year 1926 and prior years, under whatever guise attempted, and that this intention is adequately expressed in the act. Nor do we think there is any constitutional limitation upon the power of the General Assembly which would invalidate the enactment of such a law. One of the purposes of the Act of 1933 was to permit past due taxes to be refunded, that is, to permit the counties and municipalities to enter into agreements with distressed taxpayers by which the taxes might be paid by installments. But the statute gives the counties no power to enter into any arrangement with regard to taxes for the year 1926, or any years prior thereto. The act permitted the refunding for the years subsequent to 1926 only. The use of the phrase "all tax liens" was obviously intended to include more than tax sales certificates, and to render uncollectible all taxes, however the lien was evidenced, upon which no foreclosure proceeding had been brought. The term "held," as used in this connection, may not be limited to the physical holding of a tangible thing, but is sufficiently comprehensive to include rights appertaining.

The power of the Legislature to release delinquent taxes, where not forbidden by the Constitution, is well recognized. Cooley on Taxation, 4th Edition, section 1254; *Illinois Central Railroad Co. v. Commissioners,* 128 Ky., 268, 108 S. W., 245; *Auditor-General v. O'Connor,* 83 Mich., 464, 47 N. W., 443; *Stone v. Comrs.,* 210 N. C., 226, 186 S. E., 342.

In some states the Constitution directly forbids the Legislature to pass any law releasing or remitting taxes. There is no such provision in our Constitution. If other parts of the Constitution should be considered as preventing the direct release of taxes, there would seem to be no question that the Legislature may deal with the lien of taxes as it sees fit, may determine when there should be a lien, when it should attach, and when it should cease. Compare: *S. v. Fibre Co.,* 204 N. C., 295, 168 S. E., 207, and cases cited; *Lumber Co. v. Graham County,* 214 N. C., 167, 198 S. E., 842, and statutes cited. The effect of this act is to destroy the lien, and, therefore, C. S., 7990, does not afford an appropriate remedy. The instant action is not to recover taxes from a delin-

quent taxpayer but to enforce a lien on land acquired by the present owner from the delinquent taxpayer, five years after the taxes were levied. It should be understood that in 1933, when this act was passed, action on tax sales certificates for 1926 and prior years under the foreclosure act, C. S., 8037, had already become barred by the time limitation in the foreclosure act itself.

The discretionary provision contained in section 14 of the act does not apply to Wake County. We conclude that the judgment of the court below should be

Affirmed.

STACY, C. J., dissenting: My vote is for a reversal of the judgment below.

The facts are not in dispute. It is admitted that city taxes, amounting to $310.50, were duly levied against the lots in question for the years 1925 and 1926. The Metropolitan Life Insurance Company purchased the property at foreclosure sale in 1931, subject to the lien of these taxes. The taxes have not been paid.

I. *The construction of the statute.*

Admittedly, the plaintiff is entitled to enforce collection of the taxes in question in this action brought under C. S., 7990, *New Hanover County v. Whiteman,* 190 N. C., 332, 129 S. E., 808, unless they are barred and rendered uncollectible by section 7, ch. 181, Public Laws 1933, which provides: "All tax liens held by counties, municipalities and other governing agencies for the year one thousand nine hundred twenty-six and years prior thereto, whether evidenced by the original tax certificates or tax sales certificates, and upon which no foreclosure proceedings have been instituted, are hereby declared barred and uncollectible."

This language standing alone, or considered without reference to other provisions of the act, might naturally lead to some ambiguity. But taken contextually the intent of the lawmaking body is apparently involved in no serious doubt.

As recited in the title and the preamble to the act, the primary purpose was to authorize counties, municipalities and other governing agencies, in those localities to which it is applicable, "to refund tax sales certificates." The first six sections of the act deal with such refunding for the years 1927 to 1931, both inclusive, and in section 7 it is provided that all tax liens held by counties, municipalities and other governing agencies for 1926 and prior years, "whether evidenced by the original tax certificates, or tax sales certificates, and upon which no foreclosure proceedings have been instituted," shall be barred and rendered uncollectible, giving clear indication, we think, that what the General Assem-

bly intended to cut short was the foreclosure of certificates for the years designated upon which no court proceedings had theretofore been instituted. *Wilkes County v. Forester,* 204 N. C., 163, 167 S. E., 691. Note, the liens to be barred are those *held* by counties, municipalities, or other governing agencies, which connotes something more than levied, *i.e.,* sale and purchase, whether evidenced by the original tax certificates or tax sales certificates, and upon which no foreclosure proceedings have been instituted. As further indication of this intent, it is provided that no part of the section shall apply to liens "for street and/or sidewalk improvements." Such liens are not evidenced by tax certificates or tax sales certificates.

Moreover, it is not after the manner of our Assembly to grant immunities or special privileges to those who have neglected to pay their taxes. Rather, the idea was to preclude foreclosure suits on certificates when held by those governing agencies which, for so long, had slept on their rights. *Asheboro v. Morris,* 212 N. C., 331, 195 S. E., 424; *Logan v. Griffith,* 205 N. C., 580, 172 S. E., 348.

This view is strongly fortified by section 14 of the act wherein it is provided that the applicability of the act in a number of counties shall be "within the discretion of the governing bodies of said counties or municipalities therein"—a provision quite incompatible with the opposite interpretation, as, in that view, it clearly leads to an unwarranted delegation of legislative authority. *Provision Co. v. Daves,* 190 N. C., 7, 128 S. E., 593. *Cf. Livesay v. DeArmond,* 131 Or., 563, 284 Pac., 166, 68 A. L. R., 422. The fact that this discretion is not extended to Wake County renders it no less apposite in searching for the legislative intent.

The whole act deals with "tax certificates." This is so, not only in the title, but throughout the act. There is no occasion for lifting section 7 from its setting. *Warrenton v. Warren County,* 215 N. C., 342, 2 S. E. (2d), 463. Language is but a vehicle of thought and may vary in color and content according to the circumstances of its use. *Cole v. Fibre Co.,* 200 N. C., 484, 157 S. E., 857. The pervading purpose of a statute is to prevail over any awkwardness of expression. *Belk Bros. Co. v. Maxwell,* 215 N. C., 10, 200 S. E., 915; *S. v. Earnhardt,* 170 N. C., 725, 86 S. E., 960. "It is fully established that where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded"—*Hoke, J.,* in *S. v. Barksdale,* 181 N. C., 621, 107 S. E., 505.

This interpretation, however, is rejected by the majority. A different meaning is ascribed to the section. As a result, the owner of property who neglected to pay his taxes for the year 1926, and years prior thereto,

is rewarded for his delinquency by a gift of his taxes. The State then abandons its primary function as a protector of rights and becomes a giver of gifts. *Briggs v. Raleigh,* 195 N. C., 223, 141 S. E., 597.

In this view of the matter it is pertinent to inquire whether any constitutional offense was intended in section 7 of the act. Such ought not to be presumed; rather, a contrary implication should be indulged. *S. v. Lueders,* 214 N. C., 558, 200 S. E., 22. It is never to be presumed that the Legislature *intends* an infringement of the Constitution. *Jacobs v. Smallwood,* 63 N. C., 112. "A statute must be so construed, if fairly possible, as to avoid, not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *In re Seizure of Seven Barrels of Wine,* 79 Fla., 2, 83 So., 627; 11 Am. Jur., 735, *et seq.;* 6 R. C. L., 78, *et seq.*

II. *The pertinent constitutional provisions.*

The people of the State, speaking through the Constitution, have expressed their will on the subject as follows:

1. "Laws shall be passed taxing by a uniform rule . . . all real and personal property, according to its true value in money." Art. V, sec. 3. By amendment adopted at the general election in 1936, this was changed to read: "The power of taxation shall be exercised in a just and equitable manner. . . . Taxes on property shall be uniform as to each class of property taxed." Ch. 248, Public Laws 1935. Reference is made to the section before the amendment because such was the law at the time the taxes in question were levied, albeit the rule of uniformity within the class was not changed by the amendment. *Odd Fellows v. Swain,* 217 N. C., 632.

2. "No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." Art. I, sec. 7.

It has been said in a number of cases that these provisions of the Constitution announce the principle of uniformity in taxation, with special privileges to none except in consideration of public services. *R. R. v. Alsbrook,* 110 N. C., 137, 14 S. E., 652; *Simonton v. Lanier,* 71 N. C., 498. The failure to pay taxes is not classified as a public service. *R. R. v. Comrs.,* 82 N. C., 260.

To grant exemptions to those who have neglected to pay their taxes without extending some comparable privilege to those who have paid, is wanting in equality. *S. v. Graham,* 17 Neb., 43, 22 N. W., 114. The thesis of the Constitution is that all taxpayers, similarly situated, are entitled to the same treatment from the government they support. *Leonard v. Maxwell,* 216 N. C., 89, 3 S. E. (2d), 316. To make the levy uniform and then to release it in respect of a few, simply because they have neglected to pay, is not only to run counter to the rule of uniform-

ity, but also to accomplish by indirection that which may not be done directly. *LeDuc v. City of Hastings,* 39 Minn., 110, 38 N. W., 803. The final result is unequal taxation. *Demoville v. Davidson County,* 87 Tenn., 214, 10 S. W., 353.

Uniformity is not the theme of the section as interpreted by the majority. Special privilege is its essence. *Edgerton v. Hood,* 205 N. C., 816, 172 S. E., 481; *S. v. Harris,* 216 N. C., 746, at p. 753, 6 S. E. (2d), 854.

Under constitutions similar to ours, where there are provisions for equality and uniformity, as well as a requirement that all property be taxed, it has been held that acts releasing, abating or remitting delinquent taxes are void. *S. v. Armstrong,* 17 Utah, 166, 53 P., 981, 41 L. R. A., 407; *Sheppard v. Hidalgo County,* 83 S. W. (2d), 649 (rehearing granted on passage of later act. 126 Tex., 550).

Speaking to the identical question in *S. v. Butts,* 111 Fla., 630, 149 So., 746, 89 A. L. R., 946, *Davis, C. J.,* concurring, said: "It cannot well be denied that, when the proper tax officers have legally placed upon each individual his share of the public burden of taxation, the Legislature of the state has no right to lift it from him to the prejudice of other taxpayers, or to the detriment of the public credit, either in the form of an abatement before, or in the form of a gift after, collection, or by a return to the taxpayer unburden his forfeited property, for this being done, a deficiency results in the public revenues which must be supplied by the imposition of additional tax assessments and levies upon the non-favored class, thereby violating the fundamental constitutional requirement of all taxation, which is that it shall bear equally upon all, with special privileges to none."

Again, in *Simpson v. Warren,* 106 Fla., 688, 143 So., 602, it is said: "Where a statute which provides for the collection of a particular tax is valid, and taxes from some have been collected under it, the Legislature is without power to unconstitutionally discriminate against, and deny the equal protection of the laws to, the class of taxpayers who have already paid such tax while the statute was in force, by arbitrarily remitting or wiping out by repeal of the statute or otherwise the liability of those who have by their delinquency evaded or postponed payment for the time being."

Much of the cognate legislation in other states is reviewed in the case of *Steinacher v. Swanson,* 131 Neb., 439, 268 N. W., 317.

No authoritative decision has been found at variance with the views expressed in this dissent. The cases cited in the opinion of the majority do not sustain the opposite conclusion.

The suggestion that "the instant action is not to recover taxes from a delinquent taxpayer" finds support in neither brief, and departs from the

record. The prayer of the complaint is, that the plaintiff "recover for taxes due." In the agreement of the parties, it is stipulated that "this is a civil action   .   .   .   for the collection of 1925 and 1926 taxes, plus interest and costs."

BARNHILL and WINBORNE, JJ., concur in dissent.