DEADWOOD, INC., Petitioner v. NORTH CAROLINA DEPARTMENT OF REVENUE, Respondent

No. COA00-1489

(Filed 28 December 2001)

**Taxation— privilege—gross receipts—live entertainment business—requirements of uniformity—rational basis**

A de novo review reveals that defendant North Carolina Department of Revenue erred by assessing a gross receipts privilege tax against plaintiff corporation, who operates a live entertainment business that is the modern day equivalent of an opera house, from the period from 15 January 1994 through 28 February 1997 because even though plaintiff's payment of sales taxes provided no relief from taxation under N.C.G.S. § 105-37.1, the privilege tax violated the requirements of uniformity under N.C. Const., art. V, § 2 since there is no rational explanation for the differential treatment of opera houses which paid privilege taxes during the relevant taxing period versus movie theaters which paid no privilege taxes from July 1993 to 1 October 1998.

Appeal by petitioner from order entered 1 October 2000 by Judge William C. Griffin, Jr. in Superior Court, Martin County. Heard in the Court of Appeals 10 October 2001.

*David J. Irvine, Jr., for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General, Kay Linn Miller Hobart, for the State.*

WYNN, Judge.

Deadwood, Inc. challenges an assessment of privilege taxes by the North Carolina Department of Revenue for the taxing period of 1 January 1994 through 28 February 1997. Because we find that during the relevant taxing period the assessed privilege tax violated the requirements of uniformity, we reverse the Department of Revenue's decision to apply the privilege tax to Deadwood.

Deadwood operates a family entertainment facility in Beargrass, North Carolina. The facility includes an 18-hole miniature golf course, outdoor picnic area, live music on Friday and Saturday nights, video game room, playground, ice cream shop, gift shop, snack bar, restaurant and concert/dance hall. The owners and operators of

the facility, Ira Price and his son, Derek Price, designed, built and opened it in 1992.

Following an audit on 1 May 1997 of Deadwood's records for the period covering 1 January 1994 through 28 February 1997, the Department of Revenue assessed $11,947 for gross receipts tax, $1,619 for interest, and $5,974 as a penalty. In determining the gross receipt amount, the Department of Revenue used only the receipts from the admission price paid by patrons to see the live musical performances at Deadwood. Deadwood appealed to the Secretary of Revenue who sustained the tax and interest assessment but waived the penalty. Further appeal to the Tax Review Board and then to Superior Court resulted in affirmations of the agency decisions.

On appeal to us, although Deadwood contends that the administrative decision of the tax review board was arbitrary and capricious, we address *de novo* only the dispositive issues of whether the decision to assess a privilege tax on Deadwood was (1) contrary to statutory law or (2) violated Article V, Section 2 of the North Carolina Constitution. *See Dillingham v. N.C. Dept. of Hum. Serv.*, 132 N.C. App. 704, 513 S.E.2d 823 (1999).

The applicable statutory law during the relevant taxing period was set forth under N.C. Gen. Stat. § 105-37.1 (a) (1995) which provided in pertinent part,[1]

> Every person engaged in the business of giving, offering, or managing any form of entertainment or amusement not otherwise taxed or specifically exempted in this Article, for which an admission is charged, shall pay an annual license tax of fifty dollars ($50.00) for each room, hall, tent or other place where such admission charges are made.

---

1. The 1998 amendment to N.C. Gen. Stat. § 105-37.1 provides in pertinent part:

A privilege tax is imposed on the gross receipts of a person who is engaged in any of the following:

. . .

2) Giving, offering, or managing a form of amusement or entertainment that is not taxed by another provision of this Article and for which an admission fee is charged.

. . .

(b) Rate and Payment.—The rate of the privilege tax is three percent (3%) of the gross receipts from the activities described in subsection (a) of this section.

In addition to the license tax levied above, such person, firm, or corporation shall pay an additional tax upon the gross receipts of such business at the rate of three percent (3%).

To interpret the language of a statute, the primary rule of construction is that the intent of the legislature controls. *See Colonial Pipeline Co. v. Clayton*, 275 N.C. 215, 226, 166 S.E.2d 671, 679 (1969). Thus, where the language of a statute is clear and unambiguous, judicial construction is not necessary and the statute's plain and definite meaning controls. *See id.* Moreover, "[w]hen issues of interpretation of statutes or regulations arise, the construction adopted by those who execute and administer them is entitled to consideration . . . However, our courts have always stopped short of ascribing controlling weight to such constructions." *Ace-Hi, Inc. v. Dept. of Transport.*, 70 N.C. App. 214, 219, 319 S.E.2d 294, 297 (1984).

In the subject case, since Deadwood offered a form of entertainment—live music acts for which an admission fee is charged—the plain language of Section 37.1 subjects its gross receipts from the admission fees to the privilege tax unless the musical entertainment was "otherwise taxed or specifically exempted in this Article." *See* N.C. Gen. Stat. § 105-37.1 (1995).

Indeed, Deadwood argues that because it paid sales tax it was "otherwise taxed." However, the plain language under Section 37.1 prepositionally qualifies the "otherwise taxed or specifically exempted" language with the phrase "in this Article." Since Section 37.1 falls under Article 2 and sales taxes are covered under Article 5, we hold that Deadwood's payment of sales taxes provides no relief from taxation under Section 37.1.

Next, Deadwood argues that the administrative decision of the Tax Review Board violated Article V, Section 2 of the North Carolina Constitution. Specifically, Deadwood contends that it is the victim of an unconstitutional classification for taxation. As with the first issue, our review is *de novo. See Dillingham, supra.*

Under our State Constitution,

[t]he power of taxation shall be exercised in a just and equitable manner . . . *No class of property shall be taxed except by uniform rule*, and every classification shall be made by general law uniformly applicable in every county, city and town, and other unit of local government.

N.C. Const., art. V, § 2 (1999) (emphasis added). The requirements of uniformity and equal protection are the same under both the state and federal constitutions. *See Leonard v. Maxwell,* 216 N.C. 89, 93, 3 S.E.2d 316, 319, *appeal dismissed,* 308 U.S. 516, 84 L. Ed. 439 (1939).

Under North Carolina tax law, opera houses and movie theaters were historically treated the same. *See* N.C. Gen. Stat. § 105-37 (1943).[2] Deadwood contends, and we agree, that its live entertainment business is the modern day equivalent of an opera house. *See Markham v. Southern Conservatory of Music,* 130 N.C. 276, 41 S.E. 531 (1902) (Our Supreme Court treated a concert hall as an opera house). However, in 1981, N.C. Gen. Stat. § 105-37 was amended to delete references to opera houses. This change made opera houses, but not movie theaters, subject to a gross receipts tax under N.C. Gen. Stat. § 105-37.1.[3] Deadwood argues, and again we agree, that there is no rational explanation for the differential treatment of opera houses which paid privilege taxes during the relevant taxing period, and movie theaters which paid no privilege taxes from July 1993 to 1 October 1998.[4] *See* N.C. Gen. Stat. §§ 105-37 and 105-37.1 (1995). Since Deadwood's live entertainment business is the modern day equivalent of an opera house, as was the classification given to the concert hall in *Markham v. Southern Conservatory of Music,* the rule of uniformity requires it to be treated like movie theaters unless the Department of Revenue can articulate a basis for the non-uniform treatment.

The power of the General Assembly to impose taxes is undoubted, and "the right of classification is referred largely to the

2. N.C. Gen. Stat. § 105-37 (1943) provided that:

Every person, firm, or corporation engaged in the business of operating a moving picture show of place where vaudeville exhibitions or performances are given or operating a theatre or opera house where public exhibitions or performances are given for compensation shall apply for and obtain in advance from the commissioner of revenue a state license for the privilege of engaging in such business, and shall pay for such state license for each room, hall or tent used . . . .

3. Enacted in 1947, N.C. Gen. Stat. § 105-37.1 made forms of entertainment "not otherwise taxed" subject to a gross receipts tax. N.C. Gen. Stat. § 105-37.1 provides in pertinent part:

Every person, firm, or corporation engaged in the business of giving offering or managing any form of entertainment or amusement which is not otherwise taxed or specifically exempted in this Article, for which admission is charged, shall pay an annual license tax for each room, hall, tent, or other place where such admission charges are made, graduated according to population . . . .

4. On 1 October 1998, N.C. Gen. Stat. § 105-38.1 became effective and it imposed a one percent gross receipts tax on movie theaters.

legislative will, with the limitation that it must be reasonable and not arbitrary." *Belk Bros. Co. of Charlotte v. Maxwell*, 215 N.C. 10, 14, 200 S.E. 915, 917, *cert. denied*, 307 U. S. 644, 83 L. Ed. 1524 (1939). "In determining whether a purely economic regulation violates the Equal Protection Clause, the test generally applied is the rational basis standard." *In re Assessment of Additional North Carolina and Orange County Use Taxes Against Village Pub. Corp.*, 312 N.C. 211, 222, 322 S.E.2d 155, 162 (1984), *appeal dismissed*, 472 U.S. 1001, 86 L. Ed. 2d 71 (1985). A " '*mere* difference is not enough.' It must be relevant or pertinent as well as rational." *Leonard v. Maxwell*, 216 N.C. at 96, 3 S.E.2d at 321 (internal citations omitted).

It has been declared by our Supreme Court that the power to classify subjects of taxation carries with it the discretion to select them, and that a wide latitude is accorded taxing authorities, particularly in respect of occupation taxes, under the power conferred by Article V, § 3, of the Constitution. *See Charlotte Coca-Cola Bottling Co. v. Shaw*, 232 N.C. 307, 309, 59 S.E.2d 819, 821 (1950). "Equality within the class or for those of like station and condition is all that is required to meet the test of constitutionality. 'A tax on trades, etc., must be considered uniform when it is equal upon all persons belonging to the prescribed class upon which it is imposed.' " *Leonard v. Maxwell*, 216 N.C. at 94, 3 S.E.2d at 320 (internal citation omitted). "[W]ith reference to classification, it is uniform when it operates without distinction or discrimination upon all persons composing the described class." *Norfolk S. R.R. Co. v. Lacy*, 187 N.C. 615, 620, 122 S.E. 763, 766 (1924).

In levying a privilege tax, the General Assembly may set apart certain trades for the imposition of the tax and exclude others from its operation. *See Leonard v. Maxwell*, 216 N.C. at 93, 3 S.E.2d at 320. "Reasonable selection or classification of the subject for such taxation may be made by the General Assembly and different rates or different modes and methods of assessment applied to different classes." *Id.* at 94, 3 S.E.2d at 320.

Over sixty years ago, our Supreme Court provided guidance for deciding the issue in this case: Whether the non-uniform application of the privilege tax to movie theaters and entertainment facilities during the relevant period was unconstitutional. In *Snyder v. Maxwell*, 217 N.C. 617, 9 S.E.2d 19 (1940), the Court stated that:

The Legislature is not required to preamble or label its classifications or disclose the principles upon which they are made. It is

sufficient if the Court, upon review, may find them supported by justifiable reasoning. In passing upon this the Court is not required to depend solely upon evidence or testimony bearing upon the fairness of the classification, if that should ever be required, but it is permitted to resort to common knowledge of the subjects under consideration, and publicly known conditions, economic or otherwise, which pertain to the particular subject of the classification.

217 N.C. at 620, 9 S.E.2d at 21. Thus, the Court held that first, the tax classification must be based on a reasonable distinction; and second, the tax must apply equally to all of those within the defined class. *See Snyder v. Maxwell*, 217 N.C. at 619, 9 S.E.2d at 20; *See also Hajoca Corp. v. Clayton*, 277 N.C. 560, 568, 178 S.E.2d 481, 486 (1971) ("License taxes must bear equally and uniformly upon all persons engaged in the same class of business or occupation or exercising the same privilege.").

In *Snyder*, our Supreme Court upheld a statute that formed a sub-classification which imposed a higher license tax on the privilege of operating vending machines that sold soft drinks than on vending machines that were in the same classification and sold different kinds of merchandise at the same price. The Court pointed out in support of the different tax treatment that vending machines that sold soft drinks were in a "unique place in the commercial world, both as to the volume of business, the certainty of sale in comparatively large volume and, therefore, the opportunity for gainful return attending the privilege of selling" them. *Snyder v. Maxwell*, 217 N.C. at 621, 9 S.E.2d at 22. In contrast, we can discern no "unique place in the commercial world" as to the volume of business or sales generated by Deadwood's live entertainment business and movie theaters.

In sum, before the 1981 statutory amendment, movie theaters, live performances, and opera houses shared the same statutory tax classification. *See* N.C. Gen. Stat. § 105-37 (1981). In light of *Snyder v. Maxwell*, we discern no rational justification for levying privilege taxes on live musical performances and not on movie theaters. Thus, because "[n]o class of property shall be taxed except by uniform rule," we hold that the gross receipts privilege tax assessment against Deadwood's live entertainment business during the period of 1 January 1994 through 28 February 1997 violated its constitutional rights. N.C. Const. art. V, § 2 (1999). Accordingly, the decision to

assess a privilege tax against Deadwood for the period of 15 January 1994 through 28 February 1997 is,

Reversed.

Judges McCULLOUGH and BRYANT concur.