DEADWOOD, INC., Petitioner v. NORTH CAROLINA DEPARTMENT OF REVENUE, Respondent

No. 66PA02

(Filed 22 November 2002)

**Taxation— gross receipts privilege tax assessment— live entertainment business versus moving picture shows— reasonable distinctions**

A de novo review revealed that the Court of Appeals erred by concluding that the gross receipts privilege tax assessment under N.C.G.S. § 105-37.1 against plaintiff corporation's live entertainment business during the period of 1 January 1994 through 28 February 1997 violated its constitutional rights based on the differing tax treatments for live entertainment and moving picture shows, because reasonable distinctions exist between live musical performances and the type of entertainment produced in moving picture shows, including that: (1) the governmental authority and the society it represents incur greater risks and expense with live entertainment events than with a traditional moving picture show; and (2) more resources are required to ensure public safety at and around live entertainment events.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 148 N.C. App. 122, 557 S.E.2d 596 (2001), reversing an order entered 29 September 2000 by Griffin, J., in Superior Court, Martin County, which order affirmed a decision of the North Carolina Department of Revenue. Heard in the Supreme Court 11 September 2002.

*Irvine Law Firm, PC, by David J. Irvine, Jr., for petitioner-appellee.*

*Roy Cooper, Attorney General, by Kay Linn Miller Hobart, Assistant Attorney General, for respondent-appellant.*

LAKE, Chief Justice.

This case arises from the assessment of privilege taxes against Deadwood, Inc. by the North Carolina Department of Revenue for the period of 1 January 1994 through 28 February 1997. The essential question presented is whether the gross receipts privilege tax assessment against Deadwood's live entertainment business violates Article V, Section 2 of the North Carolina Constitution.

The facts of this case are undisputed. Deadwood is a North Carolina corporation engaged in the business of operating an entertainment facility in Bear Grass, North Carolina. Deadwood's facility opened in 1992 with a miniature golf course and a snack stand in operation. The facility has since grown to include a video-game room, a playground, a picnic area, an ice cream shop, a gift shop and a dance hall with live music on Friday and Saturday nights. Deadwood charged its patrons admission fees to these live music events.

On 1 May 1997, an auditor for the Department of Revenue examined Deadwood's records for the period of 1 January 1994 through 28 February 1997. The auditor determined that Deadwood had not reported or paid the gross receipts tax as required by N.C.G.S. § 105-37.1. On 13 May 1997, the Department sent a notice of tax assessment to Deadwood, which assessed $11,947 for gross receipts tax for the period of 1 January 1994 through 28 February 1997, $1,619 for interest, and $5,974 as a penalty, for a total of $19,540.

On appeal, the Secretary of Revenue waived the penalty but sustained the tax and interest assessment. Deadwood further appealed to the Tax Review Board and then to Superior Court, Martin County, both of which affirmed the decision.

Thereafter, Deadwood appealed the decision to the North Carolina Court of Appeals. That court reversed the order of the superior court and held that "because '[n]o class of property shall be taxed except by uniform rule,' . . . the gross receipts privilege tax assessment against Deadwood's live entertainment business during the period of 1 January 1994 through 28 February 1997 violated its constitutional rights." *Deadwood, Inc. v. N.C. Dep't of Revenue*, 148 N.C. App. 122, 127, 557 S.E.2d 596, 600 (2001) (quoting N.C. Const. art. V, § 2). On 9 May 2002, this Court allowed the Department of Revenue's petition for discretionary review.

The constitutional premise for Deadwood's legal argument is that the General Assembly did not base its tax classification on a reason-

**DEADWOOD, INC. v. N.C. DEP'T OF REVENUE**

[356 N.C. 407 (2002)]

able distinction and, therefore, violated Section 2 of Article V of the North Carolina Constitution. *See, e.g., Snyder v. Maxwell*, 217 N.C. 617, 9 S.E.2d 19 (1940). Deadwood further asserts that, because no reasonable distinction existed for this classification, the privilege tax in issue was not equally and uniformly applied to all subjects in the same classification. *See id.* Because Deadwood contends the administrative decision was affected by a legal error, we will review the record *de novo.* N.C.G.S. § 150B-51(b)(1), (c) (2001); *see also Dialysis Care of N.C. v. N.C. Dep't of Health & Human Servs.*, 137 N.C. App. 638, 529 S.E.2d 257, *aff'd per curiam*, 353 N.C. 258, 538 S.E.2d 566 (2000).

During the time period at issue in the instant case, "live entertainment" was not specifically taxed under article 2 of chapter 105 of the General Statutes. It was therefore governed by N.C.G.S. § 105-37.1, which then stated in pertinent part:

> Every person, firm, or corporation engaged in the business of giving, offering or managing any form of entertainment or amusement *not otherwise taxed* or specifically exempted in this Article, for which an admission is charged, shall pay an annual license tax of fifty dollars ($50.00) for each room, hall, tent or other place where such admission charges are made.

> In addition to the license tax levied above, such person, firm, or corporation shall pay an additional tax upon the gross receipts of such business at the rate of three percent (3%).

N.C.G.S. § 105-37.1 (amended 1999) (emphasis added). By contrast, "moving picture shows" were taxed differently and separate from all other forms of entertainment taxed under article 2 of chapter 105 of the General Statutes, including live entertainment. From 1989 to 1996, moving picture shows were required to pay a $200 tax for each room, hall or tent used. N.C.G.S. § 105-37 (1995) (repealed effective 1 July 1997).[1]

Although former N.C.G.S. § 105-37 has been repealed and N.C.G.S. § 105-37.1 has been amended since this action arose, the General Assembly has continued to classify "live entertainment" differently than "moving picture shows." *See* N.C.G.S. §§ 105-38.1, 105-37.1 (2002).

---

1. The current gross receipts tax on admissions to moving picture shows is found in N.C.G.S. § 105-38.1.

In its analysis, the Court of Appeals concluded that the General Assembly did not have a rational basis for taxing businesses which host live entertainment differently than "moving picture shows." We disagree and hold that a rational basis does exist for taxing "live entertainment" differently than "moving picture shows."

The power of the General Assembly to impose license taxes is undisputed, "and the right of classification is referred largely to the legislative will, with the limitation that it must be reasonable and not arbitrary." *Belk Bros. Co. of Charlotte v. Maxwell*, 215 N.C. 10, 14, 200 S.E. 915, 917, *cert. denied*, 307 U.S. 644, 83 L. Ed. 1524 (1939). Our state Constitution provides in part as follows:

> Only the General Assembly shall have the power to classify property for taxation, which power shall be exercised only on a State-wide basis and shall not be delegated. No class of property shall be taxed except by uniform rule, and every classification shall be made by general law uniformly applicable in every county, city and town, and other unit of local government.

N.C. Const. art. V, § 2. "The Legislature is sole judge of what subjects it shall select for taxation . . . , and the exercise of its discretion is not subject to the approval of the judicial department of the State." *Lacy v. Armour Packing Co.*, 134 N.C. 567, 573, 47 S.E. 53, 55 (1904), *aff'd*, 200 U.S. 226, 50 L. Ed. 451 (1906). In selecting subjects for taxation,

> narrow distinctions are sometimes invoked, and if founded on a rational basis and reasonably related to the object of the legislation, the courts will not say that a different result should have been reached or that the differentiation is arbitrary.

*Leonard v. Maxwell*, 216 N.C. 89, 96, 3 S.E.2d 316, 322, *appeal dismissed per curiam*, 308 U.S. 516, 84 L. Ed. 439 (1939). Such differences "must be relevant or pertinent as well as rational." *Id.* (citing *Louisville Gas & Elec. Co. v. Coleman*, 277 U.S. 32, 72 L. Ed. 770 (1928)).

The Court of Appeals' holding in the case at hand relied heavily on the opinion of this Court in *Snyder v. Maxwell*, 217 N.C. 617, 9 S.E.2d 19. In *Snyder*, the plaintiff challenged the validity of a privilege tax imposed on machines vending soft drinks, while machines vending items other than soft drinks were not taxed. *Id.* at 618, 9 S.E.2d at 20. Specifically, the plaintiff alleged that the General Assembly drew an unjustifiable distinction between these two classes of vending

machines. *Id.* at 619, 9 S.E.2d at 20. The plaintiff argued that because the law itself had selected the term "merchandise" as a classification, the Legislature had discriminated within that class against machines which solely vended soft drinks. *Id.* at 619, 9 S.E.2d at 20-21.

In *Snyder*, this Court set out two rules that the General Assembly must follow when classifying subjects for taxation. "First, the classification itself must be based upon a reasonable distinction. Second[, t]he tax must apply equally to all those within the class defined." *Id.* at 619, 9 S.E.2d at 21 (citations omitted). When reviewing the General Assembly's determination of a classification for taxation, "the widest latitude must be accorded to the Legislature in making the distinctions which are the bases for classification, and they will not be disturbed unless capricious, arbitrary, and unjustified by reason." *Id.* at 620, 9 S.E.2d at 21 (citing *Sproles v. Binford*, 286 U.S. 374, 76 L. Ed. 1167 (1932); *Whitney v. California*, 274 U.S. 357, 71 L. Ed. 1095 (1927), *overruled in part on other grounds by Brandenburg v. Ohio*, 395 U.S. 444, 23 L. Ed. 2d 430 (1969); *Brown-Forman Co. v. Kentucky*, 217 U.S. 563, 54 L. Ed. 883 (1910)). This Court further stated:

> The Legislature is not required to preamble or label its classifications or disclose the principles upon which they are made. It is sufficient if the Court, upon review, may find them supported by justifiable reasoning. In passing upon this the Court is not required to depend solely upon evidence or testimony bearing upon the fairness of the classification, if that should ever be required, but it is permitted to resort to common knowledge of the subjects under consideration, and publicly known conditions, *economic or otherwise*, which pertain to the particular subject of the classification.

*Snyder*, 217 N.C. at 620, 9 S.E.2d at 21 (emphasis added).

This Court reasoned that the distinctions between the two types of vending machines reasonably affected the value of the privilege because of the differences in profitability of the two machines. *Id.* at 621, 9 S.E.2d at 22.

> We think it will be unquestioned that the soft drink trade has achieved a unique place in the commercial world, both as to the volume of business, the certainty of sale in comparatively large volume and, therefore, the opportunity for gainful return attending the privilege of selling such merchandise.

*Id.* As a result, this Court upheld the Legislature's tax distinction in *Snyder.* Thus, even when the two subjects for classification are nearly identical, i.e., the sale of food and the sale of beverages from vending machines, the Legislature may nonetheless choose to tax them differently merely because one is more lucrative than the other.

The Court of Appeals in its analysis relied heavily upon *Snyder* for the proposition that, because there was "no 'unique place in the commercial world' as to the volume of business or sales generated by Deadwood's live entertainment business and movie theaters," there was "no rational justification for levying privilege taxes on live musical performances and not on movie theaters." *Deadwood,* 148 N.C. App. at 127, 557 S.E.2d at 600 (quoting *Snyder,* 217 N.C. at 621, 9 S.E.2d at 22). We consider this rationale to be a much too narrow view of the reality of the live entertainment business in general and Deadwood's business in particular as compared to the moving picture business. The court failed to recognize that, under the rationale of *Snyder,* the reviewing court may consider common knowledge, "*economic or otherwise,*" pertaining to the subject of the tax classification. *Snyder,* 217 N.C. at 620, 9 S.E.2d at 21 (emphasis added). Upon consideration of all aspects of these two forms of entertainment, economic and otherwise, we conclude that reasonable distinctions do exist between live musical performances and the type of entertainment produced in moving picture shows.

Moving picture shows simply do not draw or place demands upon the public resources in the same way and to the same extent as live entertainment venues. For instance, live performances frequently generate a high volume of traffic which is not normally attributable to moving picture shows. Moving picture theaters normally have several showings each day of the week, whereas live entertainment events are traditionally conducted on a less frequent basis. As a result, moving picture shows customarily generate a steady yet smaller stream of traffic, while live entertainment events frequently attract substantially larger numbers of automobiles and people. This increased volume and concentration of attendees places a greater burden of crowd and vehicle control on public safety personnel within a short period of time. These conditions also create an increased risk and burden in regard to highway safety and fire protection.

Additionally, live performances often attract attendees from beyond the immediate vicinity, whereas moving picture shows typically draw a more local audience. It is not uncommon for live enter-

**DEADWOOD, INC. v. N.C. DEP'T OF REVENUE**

[356 N.C. 407 (2002)]

tainment events to attract people from throughout North Carolina and its neighboring states. People will rarely, if ever, drive such distances to see a moving picture in a theater. Deadwood concedes that, over time, it has grown to attract bands and customers from "farther and farther away." Furthermore, it is common for businesses which cater live entertainment to sell alcohol, but this rarely occurs at moving picture shows. Deadwood acknowledges it has a license to sell beer. Moreover, in economic terms, ticket prices for live entertainment are generally considerably higher than the cost of admission to a moving picture show.

In *Clark v. Maxwell*, 197 N.C. 604, 150 S.E. 190 (1929), *aff'd per curiam*, 282 U.S. 811, 75 L. Ed. 726 (1931), this Court upheld a tax classification more narrowly drawn than the one in the instant case. The plaintiff in *Clark* owned a one-ton truck and was in the business of transporting goods on the highways of North Carolina. *Id.* at 604-05, 150 S.E. at 191. The applicable statutory law at issue in *Clark* mandated that a delivery vehicle which traveled greater than fifty miles to its destination be taxed at a higher rate than a delivery vehicle which traveled less than fifty miles to its destination. *Id.* at 604, 150 S.E. at 191. The plaintiff contended he was not liable for the license tax because the tax was not uniformly applied in that it exceeded the amount imposed by other statutes on persons engaged in the same business, in violation of Section 3 of Article V of the North Carolina Constitution.[2] *Id.* at 605, 150 S.E. at 192. The plaintiff further contended that the enforcement of the statute deprived him of his property in violation of his due process and equal protection rights, "in that he [was] required by [the statute's] provisions to pay a larger sum of money as a license tax than [was] required of others engaged in the same business, and similarly situated." *Id.* at 606, 150 S.E. at 192. This Court disagreed and held that the classification was reasonable. *Id.* at 608, 150 S.E. at 193. "It cannot be said that it is unjust for the State to require a larger license tax to be paid by the licensee who acquires by his license the more valuable privilege, at a greater cost to the State." *Id.* at 607, 150 S.E. at 192. This Court concluded in *Clark*: " 'If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' " *Id.* at 608, 150 S.E. at 193 (quoting *Brown-Forman Co.*, 217 U.S. at 573, 54 L. Ed. at 887).

---

2. The current version of Article V, Section 2 is similar to Article V, Section 3 as it existed in *Clark*, before the 1962 amendment.

DEADWOOD, INC. v. N.C. DEP'T OF REVENUE

[356 N.C. 407 (2002)]

This Court has sustained numerous tax classifications which rested on subtle distinctions. *See, e.g., Lenoir Fin. Co. v. Currie*, 254 N.C. 129, 118 S.E.2d 543 (upheld taxing installment paper dealers differently than banks which, in addition to their regular banking business, also deal in installment paper), *appeal dismissed sub nom. Lenoir Fin. Co. v. Johnson*, 368 U.S. 289, 7 L. Ed. 2d 336 (1961) (per curiam); *Leonard*, 216 N.C. 89, 3 S.E.2d 316 (upheld a tax on "retail merchants" where the Legislature exempted certain types of articles sold); *Great Atl. & Pac. Tea Co. v. Maxwell*, 199 N.C. 433, 154 S.E. 838 (1930) (upheld taxing businesses with one store in North Carolina differently than businesses with multiple stores in the state), *aff'd per curiam*, 284 U.S. 575, 76 L. Ed. 500 (1931); *Smith v. Wilkins*, 164 N.C. 135, 80 S.E. 168 (1913) (upheld taxing persons who traveled by foot at a higher rate than persons who traveled by vehicle); *Rosenbaum v. City of Newbern*, 118 N.C. 83, 24 S.E. 1 (1896) (upheld taxing dealers of second-hand clothing differently than everyone else, including dealers of new clothing).

In the instant case, as in all cases in which live entertainment is involved, the governmental authority and the society it represents incur greater risks and expense than with a traditional moving picture show, and because more resources are required to ensure public safety at and around live entertainment events, we conclude that reasonable distinctions exist for taxing moving picture shows differently than businesses which cater to live entertainment. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.